(68 App. Div. 320.)

## In re LARNER.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

1. INCOMPETENCE—LUNACY—INVESTIGATION—APPLICATION.

Under Code Civ. Proc. § 2017, providing that an application for the release of one restrained as an incompetent shall be signed, either by the person for whose relief it is intended, or by some person in his behalf, and section 73 of the insanity law (Laws 1896, c. 545), providing

that any one in custody as an insane person is entitled to habeas corpus on an application by him or by some friend in his behalf, an application for discharge need not be signed by a committee of the person or of the property, but may be signed by an attorney of the person incarcerated.

2. SAME—COSTS—GOOD FAITH.

Where one adjudged an incompetent was assured by her attorney that an application for her freedom would be made at the expiration of one year, and at that time, in obedience to her importunities, he made such application after he had procured advice from eminent alienists, two of whom made personal examinations of the incompetent before the writ was asked for, and others during the pendency of the proceedings, all agreeing that she was fit to be at large, and the application was refused by the judge, with the statement that the incompetent was greatly improved and was a rational being, but she was remanded because he feared a relapse of her old habits in case of release, there was no evidence of bad faith in making the application, preventing the attorney from recovering for services from the estate of the incompetent.

Appeal from special term, Kings county.

In the matter of the application of Alma Louise Larner for discharge from judicial confinement. From an order denying a motion to require the committee of the property of said Larner to pay bills for services rendered in the application, W. C. Beecher, her attorney, appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

W. C. Beecher, for appellant.

James F. Horan, for respondent Farmers' Loan & Trust Co., committee of the estate.

HIRSCHBERG, J. The facts are undisputed. The petitioner, Alma Louise Larner, appellant, was adjudged an incompetent by an order of the supreme court on the 18th day of May, 1900, and committed to the custody of Dr. James Ferguson at the Falkirk Sanitarium, Central Valley, N. Y. Her incompetency resulted from alcoholism. The Farmers' Loan & Trust Company was appointed the committee of her estate, and Henry L. Goodwin the committee of her person. In June, 1901, a writ of habeas corpus was procured on her behalf by the appellant, W. C. Beecher, on her written request, Aloysius McMahon, her private attorney, making the petition, and, after a hearing on the return and traverse of the writ, the application for her freedom was denied. The present application is to obtain a direction that the committee of the estate pay the costs and expenses of the proceeding, and it appears to have been denied, as indicated by the opinion of the learned justice at special term, because of a doubt as to the good faith of the proceedings unsuccessfully instituted to procure Mrs. Larner's release, and because of the belief that the committee of the person was the proper party to apply for such release.

While it is undoubtedly true that the committee of the person is a proper party to apply for the release of an incompetent when, in his judgment, restraint is no longer necessary or desirable, there is no rule of law requiring the application to be made in his name

or on his behalf. On the contrary, the only requirement on the subject of section 2017 of the Code of Civil Procedure is that the application shall be signed "either by the person for whose relief it is intended, or by some person in his behalf." Section 73 of the insanity law (chapter 545, Laws 1896) provides that "any one in custody as an insane person is entitled to a writ of habeas corpus, upon a proper application made by him or some friend in his behalf." And section 2343 of the Code provides that "where a person, with respect to whom a committee is appointed, as prescribed in this title, becomes competent to manage himself or his affairs, the court must make an order, discharging the committee of his property, or the committee of his person, or both, as the case requires." That notice of an application, based upon the assertion that the incompetent had become capable of managing himself, should be required to be given to the committee of the person at some stage of the proceedings, may well be conceded, and failure to give such notice, either at the initiation of the proceedings or afterwards, might be an important element of bad faith; but it appears in this case that on the return of the writ of habeas corpus a formal appearance was entered by Mr. Goodwin, and the mere fact that he neither instituted the proceedings nor joined in the application is not a sufficient ground for the denial of the payment of the proper costs and expenses.

If the proceedings were characterized by bad faith, the application for payment should of course be denied. I am unable to find anything in the record indicating bad faith, or even remotely suggestive of it. When Mrs. Larner was sent to the sanitarium, she was assured by both Mr. Beecher and by Mr. John H. Piper, then her business manager and attorney in fact, that if she quietly submitted herself to restraint and discipline for a period of one year, and manifested improvement, an application for freedom would be made in her behalf at the expiration of that time. When the time arrived they acted in obedience to her repeated written importunities. The original proceedings for her incarceration were instituted by Mr. Piper, and no ulterior motive appears which could possibly have prompted him to procure her discharge, while Mr. Beecher's well-known character and professional reputation surely attest the propriety of his conduct. As an evidence of entire good faith, the opinions of several eminent alienists were procured, two of whom made personal examinations of Mrs. Larner at the sanitarium before the writ was asked, and the others during the pendency of the proceedings, and all agreeing that she was fully restored to self-control and fit to be at large. Upon receiving the opinions of the experts and the written authority requesting the application the writ was sued out, and, although the petitioner's discharge was refused by the very able and conscientious justice who heard the case, no intimation was made by him that any element of bad faith tainted the proceedings. On the contrary, he wrote that Mrs. Larner was "greatly improved, in that she has been free from alcohol," and was "now a rational and coherent being," but he feared a relapse to her old habits in case she were released, and accordingly

remanded her to continued restraint. The order appealed from, therefore, cannot be supported on the score of bad faith.

It is not claimed that the bills in question are excessive. While they are large, they are all verified, and are incidental to the nature of the litigation. The annual income of the incompetent is very large, and no good reason seems to exist why the fraction of it which will defray these expenses should not be applied to that purpose. The fact that the habeas corpus proceedings failed is not conclusive. As the court said in Carter v. Beckwith, 128 N. Y. 312, 319, 28 N. E. 582, 583:

"The cases show, we think, that no hard and fast rule has been established in this state, concerning allowance to the defeated party or his attorney, of the costs and expenses of an unsuccessful traverse of an inquisition of lunacy. Where the proceeding is clearly groundless or vexatious, and is supported by no probable cause, or is instituted in bad faith, or for the benefit of a third party, clearly no costs should be allowed. But, as this exercise of the jurisdiction of the court to deprive a person of his liberty and property on the ground of lunacy, however necessary, is, nevertheless, the exercise of a supreme power, and should be surrounded by all reasonable safeguards to prevent mistake or fraud, so, also, where, upon a case presented after inquisition, there is reasonable ground to inquire whether the lunacy still continues, it is highly important for the protection of the rights of the party that he should be afforded all reasonable facilities for the prosecution of the inquiry, and it cannot, we think, be doubted that the court has the power, on an application to supersede the commission, where it is convinced that there is probable cause, or even in a doubtful case, to make the reasonable costs and expenses of the traverse a charge upon the lunatic's estate, and this although the traverse prove unsuccessful. Unless this power exists, the direction of the statute that, on the restoration of reason and the capacity of the lunatic to conduct his affairs, his real and personal estate shall be restored to him, would, in some cases, afford but a barren protection."

The order should be reversed, with $10 costs and disbursements, and the motion granted, with costs. All concur.