(137 App. Div. 338.)

### MOORE v. FLAGG.

(Supreme Court, Appellate Division, First Department.   March 24, 1910.)

1. DRUNKARDS (§ 8*)—LEGAL CAPACITY TO SUE—APPOINTMENT OF GUARDIAN AD LITEM—AUTHORITY OF COURT.

On petition to the Supreme Court, a drunkard was declared incompetent, and a committee of the person was appointed. The attorney who appeared for the incompetent on the hearing of the petition fraudulently procured him to execute a note, which was put in suit, and judgment rendered against the incompetent thereon. The incompetent then sued in equity in the same court to set aside the note, alleging the fraud, etc., and the court appointed a guardian ad litem to prosecute the suit. Code Civ. Proc. §§ 427, 428, provide that a guardian ad litem may be appointed for an incompetent "defendant." Code Civ. Proc. § 2340, provides that actions may be brought by the committee of the property of an incompetent. *Held*, that the statutes not applying, in view of the fact that the action was to interpose a defense, which had not been made in the suit on the note, and not a direct action to recover money, the incompetent had the legal capacity to sue, and the court had the inherent power to protect his rights by the appointment of a guardian ad litem.

[Ed. Note.—For other cases, see Drunkards, Dec. Dig. § 8.*]

2. DRUNKARDS (§ 8*)—GUARDIAN AD LITEM—EFFECT ON SUIT BY DRUNKARD.

A guardian ad litem is not a party to the suit in which he is appointed, and hence, where an incompetent has the legal capacity to sue, the fact that the guardian ad litem is improperly appointed would not affect the suit of the incompetent.

[Ed. Note.—For other cases, see Drunkards, Dec. Dig. § 8.*]

3. INSANE PERSONS (§ 32*)—JURISDICTION OF COURTS.

The Supreme Court, as a court of general jurisdiction at law and in equity, possesses inherent powers, among which is the care, custody, and control of incompetents.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 32.*]

Appeal from Special Term, New York County.

Action by William J. Moore, an incompetent person, by Royal E. T. Riggs, his guardian ad litem, against William L. Flagg. From a

judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed, and demurrer overruled, with leave to answer over.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

John B. Doyle (Dudley Davis, of counsel, and John Vernon Bouvier, Jr., on the brief), for appellant.

William L. Flagg, in pro. per.

CLARKE, J. The complaint sets up the following facts: That on January 6, 1909, a petition was presented to the Supreme Court by Sarah A. Moore, the mother of William J. Moore, the plaintiff, for an order for a commission to issue to inquire into the alleged habitual drunkenness of the plaintiff and his incompetency by reason thereof. That, on the argument of said motion on January 12th, the defendant appeared as attorney for the plaintiff. That on February 1st the plaintiff purported to execute and deliver his promissory note in writing payable on demand to the defendant for $5,000. That the plaintiff was then wholly incapacitated and incompetent and did not possess sufficient mental power and ability to know and understand the nature, force, and effect of his said act, and the defendant was fully aware of said incapacity and incompetency, and wrongfully and fraudulently, with intent to defraud the plaintiff, knowingly procured his signature to said note. That the defendant was then the sole attorney and counsellor and legal adviser of the plaintiff, and, taking advantage of the fiduciary relationship so existing induced and persuaded the plaintiff, by fraud, deceit, and undue influence, to execute and deliver the said note. That demand upon the plaintiff for payment purports to have been made on the 2d of February, and on the same day a summons in an action by the defendant against the plaintiff on said note was served on the plaintiff in the office of the defendant herein. That the complaint in said action was never served upon the plaintiff. That pursuant to an order entered on February 26th a commission de lunatico inquirendo was issued. That upon the hearings upon said commission the plaintiff was represented by the defendant, as his attorney. That an inquisition duly finding the plaintiff an incompetent was found on March 30th. Notice of a motion for an order to confirm said inquisition and to appoint said Sarah A. Moore committee of the person of plaintiff was served on this defendant on April 2d. That said motion came on to be heard on April 7th. That on April 10th a judgment was entered in the action in which the defendant, Flagg, was plaintiff and William J. Moore, plaintiff herein, was defendant, by default for $5,056.25. That on April 15th defendant caused execution on said judgment to be issued to the sheriff, and that on April 15th an order was granted confirming the inquisition and appointing Sarah A. Moore committee of the person of William J. Moore. That Royal E. T. Riggs was appointed guardian ad litem of William J. Moore by an order entered April 22d for the purpose of this action, on application duly made by the said Sarah A. Moore, as committee of the person of the said plaintiff. The complaint demands judgment that the said note be declared null and void and be delivered up and

cancelled; that the service of the summons in Flagg v. Moore be set aside; that the judgment therein entered declared void and fraudulent, and be ordered canceled, and the defendant restrained from taking any proceedings to enforce said judgment; and that pending the determination of the trial of this action a temporary injunction issue restraining the defendant from taking any proceedings to enforce said judgment.

To this complaint the defendant demurred: First, upon the ground that it did not state facts sufficient to constitute a cause of action; second, that the plaintiff had no legal capacity to sue, inasmuch as it is an attempt to maintain an action by an incompetent person as plaintiff through a guardian ad litem. The demurrer was sustained upon the ground that the plaintiff has not legal capacity to sue, and a judgment dismissing the complaint was entered, from which the plaintiff appeals.

If the action on the note had not yet gone to judgment, the court, by express provisions of the Code, would have been authorized to have appointed a person to protect Moore's interests in that action. Section 427 provides that:

"* * * If the court has in its opinion reasonable ground to believe that the defendant, by reason of habitual drunkenness, or for any other cause, is mentally incapable adequately to protect his rights, although not judicially declared to be incompetent to manage his affairs, the court may in its discretion, with or without an application therefor, and in the defendant's interest, make an order requiring a copy of the summons to be also delivered in behalf of the defendant to a person designated in the order, and that service of the summons shall not be deemed completed until it is so delivered."

And section 428 provides that if the defendant is a person judicially declared to be incompetent to manage his affairs in consequence of lunacy, idiocy, or habitual drunkenness, and for whom a committee has been appointed, "the court may, * * * at any stage of the action, appoint a special guardian ad litem to conduct the defense for the incompetent defendant, to the exclusion of the committee, and with the same powers and subject to the same liabilities as a committee of the property."

That is, express power is conferred by the Code to appoint a guardian ad litem for an incompetent defendant. This action is, in effect, for the purpose of interposing the defense which could have been interposed in the action upon the note if the conduct of the present defendant, Flagg, had not precluded the possibility of a defense therein. It is not an affirmative action to recover a money judgment against the defendant, but is in equity to protect the property of the plaintiff by procuring the setting aside of a judgment alleged to have been obtained by deceit, undue influence, and fraud.

While the plaintiff has been judicially declared to be an incompetent, and a committee of his person has been appointed, there has been no appointment of a committee of his property, and therefore section 2340 of the Code of Civil Procedure, providing that actions may be brought by the committee of the property, does not apply.

As the court appointed a committee of the person of the incompetent, but did not appoint a committee of his property, we must assume

that it refrained from so doing for good and sufficient reason. The same court, upon the application of the committee of the person, whom it had appointed, a few days thereafter appointed a guardian ad litem for the express purpose of instituting this suit. We think the order justifiable in exercise of the inherent power of the court in such cases.

In Sporza v. German Savings Bank, 192 N. Y. 8, 84 N. E. 406, Haight, J., said:

".Jurisdiction is inherent in the state over unfortunate persons within its limits who are idiots or have been deprived of the use of their mental faculties. It is its duty to protect the community from the acts of those persons who are not under the guidance of reason, and also to protect them, their persons and property, from their own disordered, and insane acts."

After showing that this care was part of the prerogative of the English sovereign, and was afterwards transferred to the Lord Chancellor, not as a part of his equitable jurisdiction, but as the king's delegate, to exercise his special jurisdiction, the court proceeded:

"On our separation from Great Britain at the time of the Revolution, so much of the law as formed a part of the king's prerogative which was applicable under our form of government was vested in the people of the state, and by legislative enactments was transferred to the chancellor, who should have the care of and provide for the safe-keeping of all idiots and lunatics, and of their real and personal estates. Act concerning lunatics, passed March 20, 1801 (Rev. Laws 1813, c. 30, vol. 1, p. 147). And upon the organization of the Supreme Court this jurisdiction was transferred to it. * * * In Matter of Tracy, 1 Paige, 580, Chancellor Walworth says: 'In this state the care and custody of the estate of lunatics, idiots, and habitual drunkards is confided to this court, without any restriction or limitation. The manner in which the control is to be exercised must, therefore, depend upon the sound discretion of the chancellor.' * * * If she had been adjudged to be insane, then she has been deprived of no constitutional right, for, being an insane person, she had become a ward of the Supreme Court, which has succeeded to the powers of the chancellor, and the custody of her person and property became subject to the control and management of the court through its specified agents appointed for that purpose. * * * She has not been deprived of her property, for the court undertakes its care and management in her behalf and for her benefit."

In Matter of Andrews, 192 N. Y. 514, 85 N. E. 699, Willard Bartlett, J., said:

"The present Constitution of the state, adopted in 1894, continues the Supreme Court 'with general jurisdiction in law and equity.' Const. art 6, § 1. This preserves the jurisdiction over lunatics and their property which was originally vested in the chancellor and Court of Chancery and was subsequently transferred to the old Supreme Court, as it existed prior to the adoption of the Constitution of 1846. That jurisdiction, however, as to the manner of its exercise, may be regulated by the Legislature, and, where this has not been done, it is to be exercised according to the established practice of the court in lunacy cases."

Illustrating the exercise by the chancellor of equitable powers in such matters, irrespective of statute, we may refer to Matter of Barker, 2 Johns. Ch. 232, decided in 1816. This was an application for a commission; the nature of the writ being de lunatico inquirendo, brought by the children of a man 85 years of age. Chancellor Kent, after pointing out that down to the time of Lord Hardwicke it was understood that there was no specific relief in the case of incapacity from mere weakness of mind, but that lunacy had to be alleged, said:

"There are cases as ancient as the time of Lord Talbot and Lord Keeper Wright (Leving v. Caverly, Prec. in Ch. 229; Anon. 3 P. Wms. 111. note), in which the court has protected the weakness of very superannuated persons, whose minds had nearly perished, by admitting them, on due proof, by affidavit or otherwise, of such imbecility, to appear and answer by guardian, and this course is still pursued in such cases. 14 Vesey, 172. * * * Lord Erskine, in the case of Ex parte Cranmer, 12 Vesey, 445, did not admit any defect of his jurisdiction. * * * If the mind, as he observed, be disorganized by sickness, grief, or old age, who could say he had not jurisdiction, and why should not a man be protected in his second state of infancy as well as in the first? He felt, as Lord Eldon appears strongly to have felt, that persons who are, above all others, entitled to protection, should not go unprotected. * * * I am satisfied that these later decisions are not only founded in good sense, and the necessity of the case, but are a sound exposition of the common law, which gave the king, as parens patriæ, the care and custody of all persons who had lost their intellects, and become non compos or incompetent to take care of themselves."

In Malin v. Malin, 2 Johns. Ch. 238, objection was made at the opening of the cause at the hearing that Jemima Wilkinson ought to have been made a party plaintiff, as she was the only person equitably entitled according to the showing in the bill, and it was answered that she could not be prevailed on, from scruples of conscience peculiar to the sect to become a party. The chancellor said:

"If Jemima Wilkinson has religious scruples which cannot be surmounted, and this shall be made to appear, either by affidavit or the report of a master, as may be directed, perhaps she may be permitted to become plaintiff by her prochein ami. A person competent to protect himself from age or weakness of mind or from some religious delusion or fanaticism, quem urget fanaticus error vel iracunda Diana, ought to come under the protection of the court."

In Markle v. Markle, 4 Johns. Ch. 168 (1819), the petition of the defendant Jacob Markle, stating that Delia Markle, one of the defendants, and who is his sister and unmarried, is of the age of 60 years, and has been deaf and dumb from her infancy, and is of such imbecility of mind as to be incapable of defending the suit Ford for the defendant moved that a guardian be appointed to appear and put in her answer and defend the suit. Opinion Per Curiam:

"Motion granted. Cases to this effect were referred to in [In re Barker] 2 Johns. Ch. 235."

Montgomery v. Montgomery, 3 Barb. Ch. 132 (1848). This case came before the chancellor upon a bill filed by the husband against his wife to annul the marriage contract between them on the ground of fraud. Chancellor Walworth said:

"There are several objections in this case to the granting of the relief asked for by the complainant. His solicitor, who saw the defendant about two years previous to the time of his examination as a witness before the master, testified that she was then in the state of apparent idiocy.. If that was the case, he should have procured the appointment of a guardian ad litem to appear and defend this suit for her."

In Hunter v. Hatfield, 12 Hun, 381, Barnard, P. J., said:

" 'So if a person, who is in the condition of an idiot or lunatic, though not found such on inquisition, is made a defendant, the Court of Chancery, upon proper information of his incapacity, will direct a guardian to be appointed.' 3 Bacon, Ab. vol. 3, 542; Mitford's Eq. Pleadings, 95. * * * Our Court of Chancery was clothed by statute with the care and custody of all idiots and

lunatics. 2 Rev. St. 52, 1. Such power is now vested in the Supreme Court. The court, at Special Term, therefore properly appointed a guardian or committee for the purpose of the action upon the petition of a near relative of the lunatic."

In Hanley v. Brennan, 19 Abb. N. C. 186 (General Term, City Court, 1887), McAdam, C. J., said:

"The court below, on the application of the plaintiff, appointed a guardian for the defendant to appear and defend the action for him. The defendant is non compos mentis, but of full age, not an idiot from nativity, has not been judicially declared insane in proceedings instituted for that purpose, and no committee of his person or estate has as yet been appointed. The question presented is whether the court below had power to make such an order. We do not find any express provision of the Code especially applicable to such a case; but we do find authorities which assert the existence of the power and approve of its exercise. * * * The insanity of the defendant does not prevent this jurisdiction from attaching, for lunatics may be sued precisely as though they were sane. Legal liabilities may be enforced against lunatics, whether the mental incapacity has been judicially declared or not; Sanford v. Sanford, 62 N. Y. 553; Brown v. Nichols, 9 Abb. Prac. (N. S.) 1, 15; Prentiss v. Cornell, 31 Hun, 167; Clarke v. Dunham, 4 Denio, 262. The following cases sustain the practice followed at Special Term; they seem to hold that the proper course is to have a guardian appointed, and that, if the lunatic's friends do not move, the plaintiff may: Wilson v. Grace, 14 Vesey, 172; Heller v. Heller, 6 How. Pr. 194; 1 Dan. Ch. Pr. 177; Thelford on Lunacy, 425; 1 Barb. Ch. Pr. 86; Faulkner v. McClure, 18 Johns. 134."

Upon inquisition found and appointment of a committee of the person, the incompetent has not become an outlaw. The title to his property remains vested in him.

"The mental incompetency of the intestate, whether judicially determined or not, did not interfere with the enforcement of a legal liability resulting from the relations of the parties. Legal liabilities may be enforced against lunatics, idiots, and infants. * * * Whether insanity or idiocy constitutes a defense to an action depends upon circumstances, and courts will properly protect the rights of those incompetent to take care of themselves; but there is no inhibition of a legal proceeding against them." Sanford v. Sanford, 62 N. Y. 553.

"But the committee of a lunatic takes no title to the real and personal estate of the lunatic. He is a mere bailiff to take charge of the property of the lunatic and to administer it subject to the direction of the court. His possession is the possession of the court. In re Heller, 3 Paige, 199; Noe v. Gibson, 7 Paige, 513; Petrie v. Shoemaker, 24 Wend. 85; Lane v. Schermerhorn, 1 Hill, 97." Matter of the Application of Otis, 101 N. Y. 580, 5 N. E. 571.

The plaintiff in the case at bar is William J. Moore. The cause of action set up in the complaint is vested in him. To be sure, he appears by his guardian ad litem, but so does an infant in an action brought to assert the infant's rights. The demurrer was sustained upon the ground that the plaintiff had no legal capacity to sue.

"A guardian ad litem is not a party to the suit, but is an officer appointed by a court of justice in a cause to prosecute or defend for, or otherwise to represent and look after, the interests of an infant or an insane person whose property rights are affected by the judgment or decree, the rendition of which is contemplated." 15 Am. & Eng. Enc. 2.

"A guardian ad litem is not a party to an action. He simply represents the party." Behlen v. Behlen, 73 App. Div. 143, 76 N. Y. Supp. 747.

"The objection is taken that the action is improperly brought by the infant in his own name by his guardian ad litem, and that it should have been brought by the general guardian of the infant in his own name as such general guardian. * * * Notwithstanding the appointment of a general guardian, the title to the property is in the infant. The statute gives to the guardian the

custody and management of the personal estate, but the beneficial interest is in the infant. * * * We think that the action was well brought in the name of the infant by his guardian ad litem." Segelken v. Meyer, 94 N. Y. 473.

We think the demurrer cannot be sustained. We have not overlooked the case relied upon by the Special Term. Rankert v. Rankert, 105 App. Div. 37, 93 N. Y. Supp. 399. That case is distinguishable upon the ground that a committee of the person and property had been appointed at the time that the guardian ad litem was appointed. One of the learned justices concurred in the result, and another dissented upon the distinct ground that demurrer would not lie. Where a committee of the property has been appointed, of course the Code expressly provides that the action may be brought by him; but, the language being permissive, even under such circumstances it might well be that special occasions might arise where adverse interests might exist in regard to a particular litigation, which would make it advisable that the incompetent be represented in that litigation by a special representative of the court, although no sufficient reason existed for removing the committee from his general control of the incompetent's property. The Supreme Court, as a court of general jurisdiction at law and in equity, possesses inherent powers, among which is the care, custody, and control of incompetents. The exercise of such power may be regulated by statute; but, in the absence of prohibitory legislation, we are unable to perceive any reason why, under the circumstances of this case, the appointment of the guardian ad litem was not proper.

The judgment appealed from should be reversed, and the demurrer overruled, with costs in this court and at the Special Term, with leave to defendant to withdraw the same upon the payment thereof and to answer over. All concur.

INGRAHAM, P. J. Whatever cause of action existed, it was vested in the incompetent, and as such the incompetent had the right to maintain an action to enforce it. If the appointment of the guardian ad litem was unauthorized, it would not make the complaint demurrable, as the complaint alleges a good cause of action in favor of the plaintiff (the incompetent) against the defendant.

I agree with Mr. Justice CLARKE that the court has inherent power to appoint a guardian ad litem, irrespective of any provision of the Code, when necessary to protect the right of a ward of the court who is incompetent to properly protect his rights.