In the Matter of the Application of JULIA M. CURTISS, an Incompetent Person, Appellant.

ELMORE S. BANKS et al., as Committee, Respondents.

Incompetent persons — statutory proceedings for commission to inquire as to the incompetency of persons do not apply to application to supersede a committee of an incompetent — practice in such proceeding — non-residence of incompetent.

Sections 2327 to 2336 of the Code of Civil Procedure, which contain provisions for the issuing of a commission to inquire as to the incompetency of persons, and prescribe the practice therefor, were not intended to apply to an application to supersede a committee of a person adjudged thereby to be incompetent. Such an application is provided for by section 2343.

The practice that should be adopted for the determination of an application for a supersedeas under section 2343 is largely within the discretion of the Supreme Court. The Appellate Division has the power to review the discretion exercised by the Special Term, but this court is limited in its jurisdiction to the review of questions of law, and, therefore, cannot review the discretion of the Appellate Division.

Conservators of the person and estate of an incompetent person who were appointed by the probate court of another state of which she was then a resident, were, on their application, appointed a committee of her property in this state, in which proceeding it was also adjudged that the incompetent person was a resident of another state. Subsequently upon a petition *de lunatico inquirendo* a commission was appointed by the Special Term to inquire whether such person was incompetent to manage her affairs. *Held*, that the question presented is whether she has gained such a residence here, since the former proceeding, as would entitle her to apply to the courts of this state for a *supersedeas*, and the Appellate Division having determined that she is still a resident of another state, such application should be made to the courts of that state.

*Matter of Curtiss*, 137 App. Div. 584, affirmed.

(Argued April 28, 1910; decided June 7, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 9, 1910, which reversed an order of Special Term directing the appointment of a commission *de lunatico inquirendo* to inquire by jury as to the competency of the petitioner.

The facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Alfred C. Petté* for appellant. The order appealed from is a final order in a special proceeding and is appealable to this court. (*Matter of Earnshaw*, 196 N. Y. 130; *Matter of Blewitt*, 131 N. Y. 541; 138 N. Y. 148; *Matter of King*, 168 N. Y. 53; *Matter of Fitzsimmons*, 174 N. Y. 15; *Matter of Velleman* v. *Rohrig*, 193 N. Y. 439.) The application to supersede the order appointing the committee was properly made in this state. (*Matter of Kingsley*, 160 Fed. Rep. 275; *Culver's Appeal*, 48 Conn. 172; *Matter of Porter*, 34 App. Div. 147; *Matter of Osborn*, 74 App. Div. 133; *Matter of Andrews*, 129 App. Div. 386.) The determination of the relief to which Mrs. Curtiss is enti-

tled in the present proceeding is not in any way governed by
any question of comity between the courts of this state and
of the state of Connecticut. (22 Am. & Eng. Ency. of Law
[2d ed.], 1321; 16 Am. & Eng. Ency. of Law [2d ed.], 577.)

*Morgan J. O'Brien* and *Gratz Nathan* for respondents.
The order of the Appellate Division reversing the order of
the Special Term is not appealable to this court. (*City of
Johnstown* v. *Wade,* 157 N. Y. 50; *Matter of Small,* 158
N. Y. 128; *Matter of Andrews,* 129 App. Div. 586; *Matter
of Osborn,* 74 App. Div. 113.) The court at Special Term
had no authority to make the order from which the appeal to
the Appellate Division was taken. (*Matter of Curtiss,* 134
App. Div. 547; 192 N. Y. 77; *Matter of Blewitt,* 138 App.
Div. 148.) The incompetent is not entitled as matter of right
to a trial by jury on the question of her competency at the
present time. (*Matter of Blewitt,* 138 N. Y. 148.) Neither
a commission nor a jury can pass upon the question of the
petitioner's competency in a proceeding taken in the state of
New York for that purpose so long as the adjudication
remains unreversed in the state of Connecticut. (*Matter of
Neally,* 26 How. Pr. 402; *Matter of Burr,* 17 Barb. 9.)
Section 2343 does not apply when the committee was
appointed under the provisions of section 2326 of the Code.
(*Matter of Neally,* 26 How. Pr. 402; *Kinnier* v. *Kinnier,*
45 N. Y. 535; *Alcott* v. *McLean,* 73 N. Y. 223; *Jones* v.
*Jones,* 108 N. Y. 415; *Read* v. *Chilson,* 142 N. Y. 405;
*Lynde* v. *Lynde,* 162 N. Y. 405; *Matter of Porter,* 34 App.
Div. 147; *Matter of Osborne,* 74 App. Div. 113; *Matter of
Bischoff,* 80 App. Div. 326; *Matter of Andrews,* 129 App.
Div. 586.)

HAIGHT, J. On the 17th day of August, 1907, Julia M.
Curtiss had her domicile in and was resident in the town of
Fairfield, Connecticut, and was possessed of property, both
real and personal, in that town. On that date she was
adjudged by the Probate Court of that district to be an incom-
petent by reason of intemperance and mental derangement,

and conservators were appointed of her person and estate; and in October subsequent, upon application of the conservators, the Special Term of the Supreme Court in the county of New York appointed the same conservators as a committee jointly of her property within this state. Thereafter and on August 26th, 1909, the Special Term of the Supreme Court, upon her application, made an order vacating the order of the Special Term appointing a committee in this state of her property, but this order was subsequently reversed in the Appellate Division and in this court. (134 App. Div. 547; 197 N. Y. 583.) It was there adjudged that she had her domicile in and was a resident of Connecticut, and that the Connecticut court had full jurisdiction of her person and property, and, therefore, the adjudication and appointment of conservators in that state was binding upon her, and that the appointment of a committee in this state of her property here was authorized by section 2326 of the Code of Civil Procedure. Thereupon and in December, 1909, the Special Term in the county of New York, upon her petition, issued a commission *de lunatico inquirendo*, and appointed commissioners to inquire by jury whether the petitioner is a person incompetent to manage herself or her affairs in consequence of lunacy or habitual drunkenness. The order allowing such commission has been reversed in the Appellate Division, and upon an appeal of the petitioner the question is now brought before this court for review.

Sections 2327 to 2336, both inclusive, contain provisions for the issuing of a commission to inquire as to the incompetency of persons, and prescribes the practice therefor. They were not intended, however, to apply to an application to supersede a committee appointed of a person adjudged thereby to be incompetent. Such an application is provided for by section 2343 of the Code.

In *Matter of Blewitt* (138 N. Y. 148) Judge EARL, speaking for the court, says: "Upon this application for a *supersedeas* the counsel for the petitioner seems to be of the opinion that his client has the right to have the question of his

sanity submitted to a jury, and to have it determined in that way. There is no provision of any statute entitling the lunatic to such a trial. Section 2343 of the Code provides that where the alleged lunatic becomes competent to manage himself and his affairs, the court must make an order terminating the committee of his person and property. When an application is made for a *supersedeas* of the commission, the court must exercise its discretion. The presiding judge may cause the lunatic to be brought before him for his personal examination. He may appoint an expert to examine him, and report as to his condition. He may cause the witness to be brought before him, and examined in open court, or he may refer the matter to a referee to take the evidence of the witnesses, and make his report thereon ; or he may hear the application upon affidavits if he is satisfied to dispose of it in that way. He may also, in the exercise of his discretion, although we have found no reported case in this country or in England where it was done, order the question as to the sanity of the alleged lunatic to be tried before a jury. But the manner in which he will ascertain whether the alleged lunatic has become sane and competent to take care of himself and his property, rests in his discretion." (p. 149.) (Citing *In re Hanks*, 3 Johns. Ch. 568; *In re Weis*, 16 N. J. Eq. 318.) It is, therefore, apparent that the practice that should be adopted for the determination of an application for a *supersedeas* is largely within the discretion of the Supreme Court. The Appellate Division has the power to review the discretion exercised by the Special Term, but this court is limited in its jurisdiction to the review of questions of law, and, therefore, cannot review the discretion of the Appellate Division.

While we are of the opinion that our power to review this case is disposed of in the foregoing paragraph, still another question has been argued, upon which it may be advisable to express our views. We thus far have discussed the question upon the assumption that the petitioner had her domicile in and was a resident of this state. But, as we have seen, it was adjudged in the Connecticut court that she had her domicile

in and was a resident of that state, and it was so held in the former review of this case in the Appellate Division and in this court. It is claimed, however, that she has since become a resident of the city of New York. It does appear that the Connecticut conservators of her person and property obtained leave from the Connecticut courts to bring her to this state temporarily, and that she remained in this state until this application was made. The question is thus presented as to whether she has gained such a residence here as would entitle her to apply to the courts of this state for a *supersedeas*. Here again we have a question of fact, or possibly a mixed question of fact and law, which the Appellate Division has determined against her. That court has held that she is a resident of Connecticut and should apply to the courts of that state which have jurisdiction of her person and property through conservators there.. In this case it must be borne in mind that the courts of this state have never attempted to pass upon the question of her competency. Our courts have only given full faith and credit to the decree of the Connecticut court and extended the conservators appointed by it to the property of the incompetent in this state, pursuant to the provisions of our Code already alluded to. While the committee of an incompetent or the guardian of an infant may consent to and establish a residence for such incompetent or infant in another place, we do not understand that the incompetent can establish a domicile other than that which existed at the time that his incompetency was adjudged. And while a committee of an incompetent appointed by the court of the state in which he had his domicile has no authority over the person or property of such incompetent in another state, except such as is permitted by comity, in this state the conservator appointed by a foreign jurisdiction may, upon application to our courts, have his jurisdiction extended to the property of the incompetent in this state; and if a committee of a lunatic appointed in a foreign state should bring his incompetent into this state for medical treatment, education, pleasure or convenience, temporarily, we should not think of interfering with the custody,

control or management of such committee of the persons under his charge so long as he does not resort to unnecessary or criminal violence.

In *Lamar* v. *Micou* (112 U. S. 452, 469) Mr. Justice GRAY, in delivering the opinion of the court, says: " As a general rule  *  *  *  the law of the domicile governs the status of a person, and the disposition and management of his movable property. The domicile of an infant is universally held to be the fittest place for the appointment of a guardian of his person and estate; although, for the protection of either, a guardian may be appointed in any State where the person or any property of an infant may be found. On the continent of Europe, the guardian appointed in the State of the domicile of the ward is generally recognized as entitled to the control and dominion of the ward and his movable property everywhere, and guardians specially appointed in other States are responsible to the principal guardian. By the law of England and of this country, a guardian appointed by the courts of one State has no authority over the ward's person or property in another State, except so far as allowed by the comity of that State, as expressed through its legislature or its courts; but the tendency of modern statutes and decisions is to defer to the law of the domicile, and to support the authority of the guardian appointed there.  *  *  *  The preference due to the law of the ward's domicile, and the importance of a uniform administration of his whole estate, require that, as a general rule, the management and investment of his property should be governed by the law of the State of his domicile, especially when he actually resides there, rather than by the law of any State in which a guardian may have been appointed or may have received some property of the ward." (See authorities there cited.)

The rule which prevails with reference to powers of guardians, to which we have above referred, is also applicable to the cases of committees of the persons and estates of incompetent persons. We think, therefore, that the petition in this

case should have been addressed to the courts of Connecticut instead of New York, and that consequently the order of the Appellate Division should be affirmed, with costs payable out of the estate of the petitioner.

CULLEN, Ch. J., GRAY, VANN, WERNER and HISCOCK, JJ., concur.

Order affirmed.