In the Matter of FRANCES J. BARNES, an Incompetent.

Supreme Court, Special Term, New York County, June 2, 1945.

216

*Holtzman & Witte* for petitioner.

*Reuben J. Aronson* for committee.

*Nathaniel L. Goldstein, Attorney-General (Louis Winer* of counsel), for Central Islip State Hospital, respondent.

HAMMER, J. In this application by petition and order to show cause the petitioner seeks an order vacating and setting aside the order appointing the committee and that under which he retained an attorney and discharging them and for such other relief as may be just. The petitioner here was adjudged mentally ill and a proper subject for custody and treatment in an institution for the mentally ill within the meaning of the statute by this court by order of certification made February 14, 1945, and committed to Central Islip State Hospital in Suffolk County. The petition was made by the assistant superintendent of Bellevue Hospital on the medical certificate of two qualified medical examiners under the Mental Hygiene Law with certificates filed with the Department of Mental Hygiene, who were members of the resident staff of Bellevue Hospital psychiatric division. The patient (petitioner), the evidence showed, had been brought to the hospital by one Jack Cutler who stated he was " her friend and business agent and brought her for her and " his " protection ". From his statements it was alleged he could not keep her in any hotels because of her drinking. She was disorderly, picked up taxi drivers and gave them drinks. He paid several thousands of dollars for her debts the past few months. She was once wealthy, and is penniless now. Her intelligence was deteriorating and she repeated over and over what she said. When she was sober she was quarrelsome and suspicious. The examiners found her un-co-operative, gazing into space, smiling in a condescending fashion and refusing to give any information and showing the tendency of alcohol to excess with a psychosis related to alcohol. On April 10, 1945, upon the petition of the medical director of Central Islip Hospital and the application by the Attorney-General based upon the prior adjudication and commitment and the allegation that she was an inmate of said hospital and at present of unsound mind and incompetent to manage her property in consequence of lunacy within the meaning of section 1356 of the Civil Practice Act and was being maintained and supported by the People as a public charge, this court by order appointed a committee of the person and property of the incompetent, the commission being issued on April 17, 1945. On April 27, 1945, a further order was made authorizing the com-

mittee to retain an attorney. The order of April 10, 1945, adjudged the petitioner here to be an incompetent person.

On petition and order to show cause a proceeding was instituted in this court in Suffolk County to review the adjudication and commitment which came on for hearing before the court on April 9, 1945. Upon the return, question was raised concerning jurisdiction, the petition having been made by said Jack Cutler as next friend and the proceeding was, after taking his testimony, discontinued by consent. A proceeding by writ of habeas corpus was then brought and by direction at petitioner's request, a hearing was had before the court and a jury on April 30th and May 1st in Suffolk County on a framed issue, viz., " Is Frances J. Barnes, petitioner, in a normal mental state presently entitling her to absolute release from Central Islip State Hospital? " The jury found the framed issue in the affirmative in favor of the relator, petitioner here, and the justice presiding sustained the writ and released her from custody immediately on May 1, 1945. The Attorney-General and the committee oppose the present application upon the ground that the petitioner here adjudged incompetent by the order of April 10, 1945, has been ever since and now is incompetent to manage herself and her affairs and was not adjudged competent by the order, which they interpret to mean merely that the incompetent should be given an opportunity to rehabilitate herself free from hospital restraint. It is pointed out that the incompetency proceeding was instituted in accordance with article 81 of the Civil Practice Act to secure reimbursement for the care, medical treatment and maintenance of the incompetent in the State institution, and that, while the Attorney-General does not ordinarily oppose discharge of a committee and restoration of property, he does, in this instance, because the medical director of the State hospital has not furnished a certificate nor is an affidavit of a qualified psychiatrist submitted that the incompetent has capacity to manage her own affairs, and because she is an habitual drunkard, unable to use anything except the poorest judgment in respect of her financial affairs and dealings and in the past several years has wasted a fortune said to amount to several hundred thousand dollars, and placed her affairs in the hands of unscrupulous persons who, she stated, fleeced her out of $55,000. Three persons, Mr. and Mrs. Gilbert and Jack Cutler, are alleged as persons named by the petitioner to whom she entrusted her property, and it is alleged Cutler's personal attorneys now represent her, and that they drew an assignment of her furniture of great value to Cutler, and that

his present attorney, Leon Felshin, who formerly represented her, prepared the deed of her Florida real property to Cutler. It is also alleged that Cutler, although he brought the petitioner to Bellevue Hospital from which she was committed to Central Islip, upon learning of the Attorney-General's application for the appointment of a committee which would require an accounting by him for her property, immediately applied for her release in a proceeding to review the commitment. The further allegation is made that the petitioner has a history of being previously in a Detroit institution, released therefrom and returned within a few days, and of creating disturbances which brought her in contact with the authorities of foreign countries and the police of various cities of the United States. The property involved allegedly consists of furniture and household goods valued at $30,000 now involved in litigation, funds and property valued at $55,000, a claim against an attorney alleged paid but no services rendered amounting to $1,600, and furniture valued at $12,400, substantial sums paid attorneys, and an alleged trust fund for petitioner said to amount to $250,000.

The petitioner represented by attorneys, on the other hand, alleges many charges to the effect that although she has been found in a normal state entitling her to release from Central Islip and is competent and capable of taking care of herself and her own affairs, the application for appointment of a committee was obtained and adjournment thereof refused in the period between jurisdictional opposition to review by jury trial of the commitment and her subsequent release after jury trial in the habeas corpus proceeding. We assume good faith upon the part of the assistants to the Attorney-General and of the committee and his attorney. Ordinarily, upon applications to review commitments of mentally ill persons or to discharge a committee and restore property upon establishing competency, an attitude of trust and helpfulness for the restoration of health and property upon the part of the committee and the officials may be expected. However, unusual facts and circumstances creating an issue in respect of competency cast upon them the duty and obligation of bringing evidence with which they are familiar to the attention of the court. (*Carter* v. *Beckwith et al.*, 128 N. Y. 312; *Matter of Larner*, 68 App. Div. 320.)

We regard it as usual to accept a determination in a proceeding such as that instituted by habeas corpus writ and the discharge from the State hospital for the mentally ill as convincing evidence that such person is competent to manage his

own person and property. However, the order is not conclusive and the Supreme Court in the exercise of its jurisdiction over a person adjudged incompetent either under section 1364 or section 1374 of the Civil Practice Act is called upon to determine from satisfactory proof shown whether the incompetent has become competent. The petitioner here was duly adjudged an incompetent and a committee was duly appointed of her person and estate pursuant to article 81 of the Civil Practice Act (§ 1356 *et seq.*), a proceeding by the director of a State hospital being a judicial determination as to competency. (*Hoff* v. *State of New York,* 279 N. Y. 490; *Finch* v. *Goldstein,* 245 N. Y. 300.) The Supreme Court has complete jurisdiction over persons adjudicated incompetent and any such who seeks to establish that he has become competent. (*Sporza* v. *German Savings Bank,* 192 N. Y. 8; *Matter of Andrews,* 192 N. Y. 514; *Moore* v. *Flagg,* 137 App. Div. 338.) Section 1382 of the Civil Practice Act (previously section 2343 of the Code of Civil Procedure) provides that where a person with respect to whom a committee is appointed becomes competent to manage himself or his affairs, the court must make an order discharging the committee and requiring the restoration of property remaining in the committee's hands which must be restored accordingly. But no procedure is provided by statute for an adjudication of competency. The proceeding is accordingly under the common law and is in the nature of supersedeas. The application for discharge being presented, the court is called upon to exercise its discretion. The judge may hear the application upon affidavits and the existing evidence, or require the incompetent to be brought before him and examined in open court, or refer the matter to a referee to take evidence of witnesses and report thereon, or direct that the question of competency be tried before a jury. The manner by which the judge will ascertain whether or not the incompetent has become competent rests solely in his discretion. (*Matter of Blewitt,* 138 N. Y. 148, affg. 68 Hun 127; *Matter of Curtiss,* 199 N. Y. 36, affg. 137 App. Div. 584; *Wadsworth* against *Sharpsteen and Moffat,* 8 N. Y. 388.) Here, in view of the circumstances disclosed and the charges and innuendo contained in the affidavits submitted, it was deemed important that the incompetent be brought before the judge and examined by him in the presence of counsel, the committee's attorney and the Assistant Attorney-General. (*In the Matter of Christie,* 5 Paige Ch. 242.) Such an examination was held.

The court is not convinced that the jury trial in the proceeding under habeas corpus and the order sustaining the writ and

releasing petitioner require a finding here that petitioner has become competent to manage herself or her affairs, or that the evidence including the manner and appearance and the answers and statements of the petitioner show return to competency, or that free of alcohol she has become competent. Habeas corpus while invoked in seeking freedom from imprisonment, restraint or detention (1 Bailey on Habeas Corpus, § 2, p. 7; *Matter of Brown,* 46 N. Y. S. 2d 575) frequently evokes evidence which requires the determination of issues necessarily involved. That too is a matter for the discretion of the court, to be decided in each instance on the evidence and issues presented.

The petitioner's contention that the findings of the jury upon the habeas corpus proceedings and her release on May 1, 1945, was *res judicata* here is without merit. *Hoff* v. *State of New York* (279 N. Y. 490, *supra*), *Matter of Clark* (175 N. Y. 139) and *Matter of Clarkson* (186 App. Div. 575, affd. 227 N. Y. 599) do not support that view. In those cases the subject matter presented in both litigations was the same. Here, the habeas corpus was for release from confinement to the State hospital for treatment for mental illness and the present proceeding is to adjudge that the incompetent has become competent. The subject matter is different. (*Finch* v. *Goldstein,* 245 N. Y. 300, *supra.*)

Under the circumstances here it is deemed proper to direct a jury trial of the issue of competency at Trial Term, Part II, of this court, to be framed as follows: (1) Has Frances J. Barnes become competent to manage herself, and (2) has Frances J. Barnes become competent to manage her own affairs? At such trial the Attorney-General may present psychiatric evidence and petitioner, if so advised, may offer the testimony of a psychiatrist of her own choice.

Further disposition of the motion will be held in abeyance pending such jury trial. Settle order.