IN THE MATTER OF THEODORE SWERTLOW, A/K/A ISI-
DORE SWERTLOW, DECEASED.

TAUBA HOROWITZ, EXECUTRIX OF THE ESTATE OF
THEODORE SWERTLOW, PETITIONER-APPELLANT, v.
STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1979—Decided April 27, 1979.

Before Judges MATTHEWS, KOLE and MILMED.

*Mr. Joseph A. Burton* of the New York Bar, admitted *pro hac vice,* argued the cause for appellant (*Messrs. Smith, Sand & Goldstein,* attorneys; *Mr. Jeffrey N. Goldstein,* on the brief).

*Mr. Martin L. Wheelwright,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General, attorney; *Ms. Erminie L. Conley,* Assistant Attorney General, of counsel).

PER CURIAM. This is an appeal from a determination that the estate of which petitioner is executrix is liable for the New Jersey inheritance tax. The executrix contends that decedent was not a domiciliary of New Jersey at the time of his death. More specifically, she contends: (1) there was

insufficient credible evidence in the record to uphold the finding that decedent had been domiciled in New Jersey; (2) the New Jersey Transfer Inheritance Tax Bureau had no jurisdiction to decide whether decedent had the mental capacity to change his domicile to New Jersey because a New York court had earlier made that determination and hence had exclusive jurisdiction; (3) the earlier New York decision (that decedent was a domiciliary of New York) must be given full faith and credit here; (4) the hearing officer improperly interpreted a New Jersey Superior Court decision involving decedent, and (5) because only a question of law is involved we can decide the question of domicile anew on appeal.

Decedent had lived in New York City from the date of his birth in 1903 until sometime in 1973. Then, after a sister with whom he had lived died, he moved to a rest home in Haskell, New Jersey. He stayed there until August 8, 1973 when he moved to the Miriam Apartments which are operated by the Daughters of Miriam Association in Clifton, New Jersey.

He moved most of his money to the Prospect Park National Bank and opened a safe deposit box in the same institution. He owned no real property in New York and apparently never acquired any here.

At some time in 1973 his brother brought a proceeding in the New York Supreme Court to have himself appointed conservator of any of decedent's property which was still located in New York. An attorney appeared for Mr. Swertlow (decedent herein) to contest the New York court's jurisdiction. The court took proof on the issue of domicile and concluded that decedent had been removed to New Jersey "under suspicious circumstances." The basis for this conclusion remains unclear since apparently no records of that proceeding are now extant. A psychiatric report submitted to the New York court concluded that decedent was not able to manage his own property. The New York judge therefore decided that decedent had insufficient mental capacity to make

any decision regarding a change of domicile and he appointed decedent's brother as conservator.

The New York conservatorship proceeding is used for persons who have not been judicially declared incompetent but whose ability to care for their property has been substantially impaired. N. Y. Mental Hygiene Law, § 77.01 (McKinney). No similar proceeding exists in this State.

Shortly before the New York order was signed on November 16, 1973 decedent became concerned that his brother would withdraw from the New Jersey bank funds decedent had deposited there. He therefore obtained from the New Jersey Superior Court an order to show cause why the bank should not refuse to release his money and why his brother should not be enjoined from attempting to remove decedent from New Jersey.

When the conservator appeared before the Superior Court he asked the judge to give full faith and credit to the New York order and direct the bank to turn over the New Jersey assets to him. The judge refused, noting that New Jersey had no office comparable to a conservator. It was undisputed that by New Jersey standards decedent was not incompetent. Apparently because the New York order purported to control only property located in New York, the judge refused to give full faith and credit to it.

When decedent died in New Jersey the Transfer Inheritance Tax Bureau contended that his estate was subject to tax and made its own independent determination that he was a domiciliary of this State. The hearing officer held that the proofs before him (which included the records of the New York and New Jersey proceedings) showed that decedent's mental condition had improved since the New York proceeding and that he had changed his domicile to New Jersey.

██ We affirm. We agree that the hearing officer had the authority to inquire into the question whether decedent's mental condition had improved since the New York proceeding. We do not accept appellant's argument that our courts

and agencies should defer to those of New York since New York had already made a determination that decedent needed a conservator.

The cases which appellant cites to uphold that contention do not, in fact, support it. Those cases (*Matter of Curtiss*, 137 *App. Div.* 584, 122 *N. Y. S.* 468 (App. Div. 1910), aff'd 199 *N. Y.* 36, 92 *N. E.* 396 (Ct. App. 1910); *Matter of Curtiss*, 134 *App. Div.* 547, 119 *N. Y. S.* 556 (App. Div. 1909), aff'd 197 *N. Y.* 583, 91 *N. E.* 1111 (Ct. App. 1909)) held that a New York court should defer to the courts of Connecticut which had adjudged Mrs. Curtiss incompetent.

This case is clearly distinguishable from the *Curtiss* cases. First, the New York court did not adjudge Mr. Swertlow's competency: it simply appointed a conservator. Secondly, the *Curtiss* court deferred to Connecticut because the courts there specifically found, based on evidence presented, that Mrs. Curtiss had always been a domicilary of Connecticut and was in New York temporarily only at the indulgence of the Connecticut court; thus the New York courts properly gave full faith and credit to the earlier Connecticut decree and refused to consider whether Mrs. Curtiss' condition had improved.

We note that the *Curtiss* cases express a minority view. Most other jurisdictions which have passed on the issue have determined that a sister state may decide whether incompetence continues despite a determination of incompetence made in another state. Similarly, the second state may decide, if the facts so warrant, that a person adjudged incompetent in another state nevertheless has the capacity to change his domicile. See *Estate of Phillips*, 269 *Cal. App.* 2d 656, 75 *Cal. Rptr.* 301 (D. Ct. App. 1969), and cases collected and referred to therein.

The executrix also contends that because the New York court decided that decedent was a domicilary of New York we were required to give that decision full faith and credit. We disagree. The hearing officer properly relied on *In re Dorrance*, 115 *N. J. Eq.* 268 (Prerog 1934), aff'd *sub. nom.*

*Dorrance v. Thayer-Martin,* 13 *N. J. Misc.* 168 (Sup. Ct. 1935), aff'd 116 *N. J. L.* 362 (E. & A. 1936), *cert.* den. 298 *U. S.* 678, 56 *S. Ct.* 949, 80 *L. Ed.* 1399 (1936), pet. for reh. den. 298 *U. S.* 692, 56 *S. Ct.* 957, 80 *L. Ed.* 1410 (1936) in this regard.

We agree that the issue of domicile cannot be relitigated between the parties to the action in the other state, but parties who are not involved in the original proceedings are not foreclosed by the Full Faith and Credit Clause from thereafter litigating the question of jurisdiction. *Zieper v. Zieper,* 14 *N. J.* 551, 559–560 (1954). Since the State of New Jersey was not a party to the New York proceeding the question of jurisdiction could be relitigated here and full faith and credit does not require enforcement of the earlier New York decision.

Nor do we agree with the executrix that there is only a question of law involved in this appeal. The hearing officer made a factual determination that decedent was not incompetent to change his domicile and had, in fact, changed it, and we find that the evidence before him was sufficient to sustain those conclusions. There had never been an adjudication of incompetency in any state, and the hearing officer had before him two medical reports which gave the opinion that decedent was capable of managing his own affairs at the time of the New Jersey Superior Court proceeding. He also had an affidavit submitted by decedent in the Superior Court action in which decedent swore he had deliberately chosen to move to this State. While we do not agree that the evidence disclosed an improvement in decedent's condition between the time of the New York and New Jersey decisions, we do find sufficient evidence to uphold the conclusion that decedent was competent to change his domicile at the time he moved to New Jersey.

Finally, we conclude that the hearing officer did not misinterpret the Superior Court decision, at least not in any way that affected the outcome of the present proceeding.

Affirmed.