In re WALLACE.

(Supreme Court, Appellate Division, First Department.  January 28, 1916.)

1. INSANE PERSONS ⏍41—COMMITTEES—COMPENSATION.

The committee of an incompetent ceases to have power to reduce to possession the property of the incompetent after his death; so the committee is not entitled to commissions on sums received after the incompetent's death.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 39, 63; Dec. Dig. ⏍41.]

2. INSANE PERSONS ⏍41—COMMITTEE—COMPENSATION.

Where a court delayed in passing on accounts of the committee of an incompetent until the amounts involved aggregated more than $100,000, the allowances must be made on the basis of a single commission to the committee, and not full statutory commissions to each member, on the theory that the estate exceeded $100,000.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 39, 63; Dec. Dig. ⏍41.]

3. INSANE PERSONS ⏍41—COMMITTEES—COMPENSATION.

Where the committee of an incompetent advances money for his support, they are entitled to reimbursement, but are not entitled to commissions thereon; the sums not having been collected by them.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 39, 63; Dec. Dig. ⏍41.]

4. EXECUTORS AND ADMINISTRATORS ⏍497—ESTATES—ALLOWANCES FROM.

Where the wife of an incompetent, who was the mother of his infant heir, performed services in conserving the estate, which services also redounded to her benefit, she is not entitled to an extra allowance, having become administratrix of the estate, although another member of the committee of the incompetent, who performed extraordinary services, may be entitled to an extra allowance.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2117-2124; Dec. Dig. ⏍497.]

Appeal from Special Term, New York County.

In the matter of Allen Wallace, an incompetent.  From an order modifying, and, as modified, confirming, a report of a referee making allowances to the committee, an appeal was taken.  Affirmed.

The opinion of Shearn, J., is as follows:

[1] I cannot confirm the report of the learned referee as it stands, although it is not opposed.  Among the items of commissions allowed is $7,687.28 to each member of the committee, based upon the assumption that the committee received the corpus of the estate, amounting to $749,728.33, after the death of the incompetent.  The committee of an incompetent ceases to have power to reduce to possession any property of the incompetent after the incompetent's death, so that the committee could not have legally received any of the principal after the incompetent's death.  Furthermore, there is no proof that the principal, or any part of it, was at any time received by the committee.  The proof is entirely to the contrary.  Down to the death of the incompetent the trust fund of $750,000, bequeathed by the will of the father of the incompetent, was held by the Farmers' Loan & Trust Company as trustee; the income being turned over to the committee and used for the benefit of the incompetent.  By the settlement made with the residuary legatees this trust fund became, on the death of the incompetent, the property of the incompetent's estate, and as to all of it, except $100,000, which was to be held until the death of Virginia F. Bacon, became payable to his estate; that is, to an executor or administrator, not to a committee, which ceased to act coincidently with the incompetent's

⏍For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

death. The proof shows clearly that Mrs. Wallace was in due time appointed administratrix of the estate of the deceased incompetent, and that, as the estate was so large that a heavy bond would have been required, the principal was, by decree of the surrogate, only constructively turned over to the administratrix; the surrogate directing that the trust company, as trustee, should terminate its trust, except as to the said $100,000, by delivering the fund to itself, subject to the order of the administratrix, countersigned by the surrogate. This course was pursued. There is, therefore, no foundation whatever for an award of commissions to the committee of the incompetent for receiving and disbursing this fund.

[2, 3] In the next place, commissions amounting to $2,796.31 to each member of the committee, based on receipts and disbursements of income, have been allowed, made up of the statutory allowance on different amounts received by the committee and at different times reported to the court. This allowance is a double commission, on the theory that the estate exceeded $100,000. No one of the separate accounts equals $100,000. Had the court passed on each account when filed, and allowed commissions, each member of the committee might now be authorized to be paid; but the sum allowed would have to be fixed on the basis of a single commission, instead of double commissions. Included in the items on which commissions were allowed was the sum of $46,434.87, claimed to have been expended by the committee in excess of the amount received by them. The advance of moneys for the support of an incompetent in excess of the income received would entitle the committee to reimbursement; but, as they have not received the amount, they cannot be allowed commissions on it. The statute only allows commissions on moneys received and paid out. Besides, the evidence before the referee showed that this large sum was not paid by the committee, but by Mrs. Wallace, as the wife of the incompetent, and a considerable part of it was paid before the committee was appointed. This item of the commissions is therefore fixed and allowed at $1,761.98 for each member of the committee, being 5 per centum on the first $1,000, 2½ per centum on the next $10,000, and 1 per centum on the balance of $147,198.12; the total amount received and paid out by the committee being $157,198.12.

[4] The learned referee has awarded Mr. Taylor, one member of the committee, an extra allowance of $22,500, and Mrs. Wallace an extra allowance of $12,500, on the ground that they rendered extraordinary and unusual services in excess of the ordinary duties of an executor or administrator. The interests of an infant six years of age being involved, and the sum of $60,000 having been spent in counsel fees, much as I dislike to substitute my judgment for that of the learned referee, I do not feel justified in allowing $35,000 additional fees out of this estate. It is true that a very difficult situation confronted Mrs. Wallace, and that both Mrs. Wallace and her relative, Mr. Taylor, handled the situation with great judgment and skill and achieved a fine result for the infant. It must not be lost sight of that the services of skilled counsel, who were liberally paid, must have been an important contributing factor. What Mrs. Wallace did, both for the incompetent and the interests of her infant daughter, was that which duty and natural love and affection dictated. Her own personal interests were also affected and served by her vigilance and work. While this is all deserving of commendation, it should not, in my opinion, be made the basis of an extra allowance from the infant's estate. The case of Mr. Taylor is different, because of the business experience and judgment that he brought to his duties and the time that he devoted to the matter. In view of all the circumstances, it seems to me that an allowance of $15,000 to Mr. Taylor is liberal, and at the same time not excessive.

With these modifications the report is confirmed.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Nathan Burkan, of New York City, for appellants.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of Shearn, J. Order filed.