In the Matter of Samuel E. Haslett, an Incompetent Person. Claim of John B. Lord, Appellant.

John T. Bladen and Brooklyn Trust Company, as Committee of the Estate of Samuel E. Haslett, Respondents.

Second Department, June 6, 1919.

**Incompetent persons — jurisdiction of County Court — allowances to third person for money expended in protection of person or estate of incompetent.**

By virtue of subdivision 4 of section 340 of the Code of Civil Procedure a County Court has concurrent jurisdiction with the Supreme Court over the person and property of a resident of the county, and, under section 2320 of the Code of Civil Procedure, a County Court first acquiring jurisdiction has exclusive jurisdiction of such proceedings.

An incompetent having been adjudged *non compos mentis*, and a committee having been appointed, the general jurisdiction of equity extends over such committee in the same manner as over all other strictly fiduciary persons.

Allowances out of the estate of an incompetent for services performed to the benefit of such incompetent or his estate are not confined to persons interested as heirs or next of kin of the incompetent.

Applications for allowances are made to the conscience of the court, to do what is right and fair, considering all the facts.

Where a petitioner, acting in good faith, for the benefit and protection of the person and property of one unable by reason of mental defects to care for himself and who has no other protector, guardian or person interested in his welfare, intervenes in good faith to protect such incom-

petent, and where the service rendered was necessary and was of actual benefit to the incompetent, the person so intervening should be made whole for necessary expenditure actually incurred in such service, out of the estate saved from spoliation.

A County Court, having taken jurisdiction of an incompetent person and appointed a committee, has the authority to hear and determine a petition by one seeking to be reimbursed for money expended for the protection and benefit of the incompetent.

PUTNAM, J., and JENKS, P. J., dissented, with opinion.

APPEAL by John B. Lord, claimant, from an order of the County Court of Kings county, entered in the office of the clerk of said county on the 4th day of February, 1919, as resettled by an order entered on the 17th day of February, 1919, denying for want of power an application for the payment to the appellant of certain sums expended by him in the defense of certain actions which he alleges were beneficial to the incompetent.

*Conrad Saxe Keyes* [*T. Ellett Hodgskin* with him on the brief], for the appellant.

*Jackson A. Dykman,* for the respondent.

KELLY, J.:

The learned county judge says in his memorandum opinion denying the application and dismissing the petition: " There seems to be no authority in law to justify the reimbursement to the petitioner of the moneys expended by him in the matter referred to in his petition, even though he acted in the interest of his friend and client." This is equivalent to sustaining a demurrer to the petition on the ground that assuming all the facts alleged therein to be true, still the court is without power to grant him relief. I think the learned county judge erred in so limiting the power of the court in administering the trust devolved upon it by statute. The jurisdiction of the County Court extends to " the custody of the person and the care of the property, concurrently with the Supreme Court, of a resident of the county, who is incompetent to manage his affairs, by reason of lunacy, idiocy, or habitual drunkenness; or imbecility arising from old age or loss of memory and understanding or other cause." (Code

Civ. Proc. § 340, subd. 4.) And, " Where a County Court
has jurisdiction of those matters, concurrent with that of the
Supreme Court, the jurisdiction of the court first exercising
it, as prescribed in this title, is exclusive of that of the others,
with respect to any matter within its jurisdiction, for which
provision is made in this title." (Id. § 2320.) In the present
case, the County Court having entertained jurisdiction of the
incompetent, duly appointed a committee to care for his
estate, and the committee duly qualified and entered upon
the discharge of their duties.

I express no opinion as to the propriety or reasonableness
of the claim presented by the appellant — these are matters
which should be investigated and determined by the County
Court, but I think a case was presented where that court
should have entertained the application and proceeded to so
investigate and determine it.

While the jurisdiction of the chancellor over the person and
property of incompetents was originally derived from the
King as *parens patriæ*, and did not belong to the Court of
Chancery by virtue of its inherent and general judicial func-
tions, after this special jurisdiction had been exercised in any
particular case by adjudicating an individual to be a lunatic
or incompetent person and by appointing a committee of his
person and property, a further jurisdiction then arose in the
Court of Chancery to supervise and control the official conduct
of the committee, but this supplementary jurisdiction of the
court seems to have been a part of its general authority over
trusts, trustees and fiduciary persons. (3 Pom. Eq. Juris.
[3d ed.] §§ 1311–1314.) In this State the jurisdiction is
expressly conferred by the provisions of the Code (*supra*),
and the incompetent having been adjudged *non compos
mentis*, and the committee having been appointed, the general
jurisdiction of equity extends over such committee in the same
manner as over all other strictly fiduciary persons. In
*Jones* v. *Lloyd* (L. R. 18 Eq. 265, 274, 275), cited by
Professor Pomeroy, JESSEL, M. R., was of opinion that a
court of equity had inherent power to intervene to pro-
tect the person and property of a lunatic or person of weak
mind, in advance of a formal adjudication of lunacy. This
court, in the First Department, has recently considered the

power of the Supreme Court as a court of equity in authorizing allowances from the estate of an incompetent person, in possession of a committee duly appointed (*Matter of Farmers' Loan & Trust Co.*, 181 App. Div. 642), and it was held that such allowances or payments rested in the sound discretion of the court exercising equitable jurisdiction and acting for the incompetent in reference to his estate as it supposes the incompetent would have acted if he had been of sound mind (citing *Sporza* v. *German Savings Bank*, 192 N. Y. 8; *Matter of Strickland*, L. R. 6 Ch. App. Cas. 226; *Matter of Earl of Carysfort*, Craig & P. 76); and Lord ELDON said, in *Ex parte Whitbread* (2 Mer. 99), in discussing the reasons for granting allowances out of the estates of lunatics: " the Court will not refuse to do, for the benefit of the Lunatic, that which it is probable the Lunatic himself would have done." These allowances or payments are not confined to persons interested as heirs or next of kin of the incompetent. In *Carter* v. *Beckwith* (128 N. Y. 312) allowance was made out of the estate for counsel fees and expenses to an attorney who had unsuccessfully sought to obtain the release of the incompetent and his estate from the custody of the court. I think these applications are made to the conscience of the court, to do what is right and fair considering all the facts. Where a petitioner acting in good faith, for the benefit and protection of the person and property of one unable by reason of mental defects to care for himself and who has no other protector, guardian or person interested in his welfare, intervenes in good faith to protect such incompetent, and when the service rendered was necessary and was of actual benefit to the incompetent, it would seem only right that the person so intervening should be made whole for expenses actually incurred out of the estate saved from spoliation.

I do not say that the petitioner's case here measures up to these requirements, but the facts alleged made it proper for the learned county judge to proceed further to ascertain whether they called for the exercise of the broad powers necessarily vested in the court in such circumstances. To hold that the court is without power to afford relief in such case would be to discourage persons from interfering to prevent manifest wrong. The history of the incompetent in

this proceeding, as disclosed in the petition, is familiar to residents in Brooklyn. He was a man advanced in years, a recluse, living alone in a large mansion in the Heights section. He had a considerable estate but apparently no relatives, or persons who took any interest in his welfare except the petitioner, who avers that for some time he had attended to his physical necessities, taking charge of his residence and generally caring for him. The old gentleman fell into the hands of two strangers, a nurse and a friend or associate of the nurse, who took possession of his house, obtained powers of attorney from the incompetent, installing themselves in the residence by force of arms, in complete control of the person and property of the aged man who had not at that time been legally adjudged an incompetent. They refused admission to the petitioner and other persons who desired to see the sick man. The petitioner, a lawyer, who alleges that he had previously acted for the old man, that he had been his friend and adviser for many years, rendering services to him in various ways and holding a power of attorney to attend to his business affairs, ascertaining the facts, says he became satisfied that the nurse and his associate were engaged in a conspiracy to obtain control of the person and property of the aged and incompetent man. He brought the matter to the attention of one of the city magistrates, who issued a warrant for the arrest of the alleged conspirators and they were afterwards indicted by the grand jury of Kings county. As a result of these acts of the petitioner, he alleges that proceedings were thereafter instituted in the County Court resulting in an adjudication of incompetency and the appointment of a committee of the property of the incompetent. It appears from the petition that the two alleged conspirators were acquitted by a jury on the trial of the indictment, and that they instituted actions against the petitioner to recover damages for alleged malicious prosecution. Petitioner retained counsel to defend him, but by the time the actions were reached for trial, he avers he was in poor health and physically unable to bear the strain of a trial, and under advice of his counsel he consented to settle the actions for an amount less than the expense for counsel fee necessary if the cases had gone to trial. He seeks reim-

bursement for his expenditure in this litigation which he says was for the benefit of the incompetent, alleging that if the latter was competent to determine the matter for himself he would feel morally if not legally bound to indemnify the petitioner.

This is the case presented by the petitioner. Whether the petitioner was justified in acting as he did, whether his compromise of the action brought against him bars him from recovery, whether the amounts expended by him were in whole or in part reasonable and proper, having reference to the amount of the estate of the incompetent — these are all questions which may be examined and determined by the County Court. I express no opinion on these questions, but I think the County Court has the necessary power and authority to entertain the application and make such disposition of it as may accord with principles of equity and fair dealing.

The order should be reversed and the petition referred back to the County Court for disposition in accordance herewith, the question of costs of the appeal to be determined upon the final disposition.

MILLS and JAYCOX, JJ., concurred; PUTNAM, J., read for affirmance, with whom JENKS, P. J., concurred.

PUTNAM, J. (dissenting):

I dissent on two grounds: *First.* Heretofore allowances from estates of lunatics in New York have been to the next of kin, or those members of the family for whom the lunatic would be bound to provide. In *Matter of Willoughby* (11 Paige, 257) and *Matter of Farmers' Loan & Trust Co.* (99 Misc. Rep. 420; 181 App. Div. 642) the recipients were the next of kin. *Second.* It is to be remembered that the powers of the chancellor as immediate representative of the Crown do not vest in this court, or the County Court. (*Bascom* v. *Albertson*, 34 N. Y. 584, 590, 592; *Holland* v. *Alcock*, 108 id. 312, 330.) The equitable doctrine that can be enforced is that there must be a duty of support or education toward the members of his family or to some special object of his interest which can be thus fulfilled by the Court of Chancery.

Of course the court has inherent power to reimburse its officials, or the committee which has acted as curator over the administration of the estate. (*Matter of Wallace,* 172

App. Div. 544; *Matter of Maxwell*, 218 N. Y. 88.) Having formerly been Mr. Haslett's attorney, Lord was not a curator, committee or even the petitioner for the appointment of the present guardian. Learning that Decker and Gardner had obtained an improper power of attorney, Mr. Lord, the petitioner, laid the facts before a magistrate, who issued a warrant for their arrest. When they had been set free, each sued Lord for malicious prosecution. He compromised the actions by paying $1,000 to each plaintiff and incurring upwards of $5,700 legal expenses. The payments and settlements stand as an acknowledgment of his liability.

No contract could be implied. When the suits against Mr. Lord were started in 1916, a committee for four years had been the custodian of the estate. The petition shows no privity on the part of such committee with the petitioner's defense or with his negotiations that led to this compromise. Through resort to the idea of a *quasi* contract, a lunatic's estate was made to pay for necessaries. Equity stretched this to take in certain objects of the incompetent's prior bounty toward those of his household and in rare cases to those charities which he had been wont to support. But we are asked to make Mr. Haslett's estate an indemnitor — which is never presumed. Beyond that, to indemnify a tort-feasor for his payments to the injured party, wherein even a sane and competent person is not liable to make contribution or indemnity. (14 R. C. L. 48.)

Could a court thus put on the estate of this incompetent (*first*) a lawyer's responsibility for invoking the criminal law, and (*second*) direct payment of the compromise sums incurred after acquittal of those whom he had accused? It may be that Mr. Lord has a moral claim, but we are concerned with a legal liability of a lunatic's estate for such voluntary compromise of tort actions.

I think the County Court rightly denied the application.

JENKS, P. J., concurred.

Order of the County Court of Kings county reversed, and the petition referred back to said court for disposition in accordance with opinion by KELLY, J., the question of costs of the appeal to be determined upon the final disposition.