In the Matter of the Application of Henry L. Roosevelt to Sell Certain Real Property Belonging to the Estate of Samuel M. Roosevelt, Deceased, Pursuant to Sections 67 to 71 of the Real Property Law.

Supreme Court, Onondaga County, April 10, 1928.

**Costs — proceeding by life tenant to sell real property, pursuant to Real Property Law, §§ 67–71 — proceeding is special proceeding within meaning of Civil Practice Act, §§ 4, 5, but neither Civil Practice Act nor Real Property Law contains provisions for payment of costs or allowances — Civil Practice Act, § 1492, and Rules of Civil Practice, rule 300, have no application — Real Property Law, §§ 69, 71, applied — court has inherent power to grant allowances and disbursements — guardian ad litem should be compensated — petitioner entitled to disbursements made to broker retained to sell property and to attorneys.**

A proceeding by a life tenant to sell real property pursuant to sections 67–71 of the Real Property Law is a special proceeding within the meaning of sections 4 and 5 of the Civil Practice Act. But nowhere in the Civil Practice Act nor in those sections of the Real Property Law referred to is there provision for the payment of costs, allowances or disbursements in a proceeding of this character.

Section 1492 of the Civil Practice Act, which provides for costs in a special proceeding in a court of record, has no application since that section relates exclusively to costs in a proceeding and petitioner has not asked for costs here. Nor does rule 300 of the Rules of Civil Practice apply in so far as the compensation of the guardian *ad litem* herein is concerned, since it relates exclusively to the sale of infant's real property.

Pursuant to section 69 of the Real Property Law the proceeds of the sale should be deposited with a trust company as trustee or with an individual appointed by the court as trustee and the trustee receiving the proceeds of the sale should distribute them as required by section 71 of the Real Property Law to and among the remaindermen or other persons entitled thereto in accordance with the order of the court upon an accounting.

Consequently, if the expenses of the proceeding are to be paid at all they must be paid from the proceeds of the sale herein before any money is turned over to the new trustee.

The court has inherent power herein to grant allowances and disbursements.

While the interests of the infants are contingent only they are necessary parties to the proceeding and since it was necessary that a guardian *ad litem* be appointed for them said guardian *ad litem* should be compensated out of the fund in question.

Petitioner properly retained a broker to sell the property and he is entitled to a reasonable broker's commission for such services as a necessary disbursement.

Since all those now interested in the trust urge that the allowances applied for be made, the claims made on behalf of the broker, the guardian *ad litem* and petitioner's attorneys being fair and reasonable in amount, an order should issue to that effect.

Application to confirm sale and for allowances and disbursements in proceeding by life tenant to sell real property, instituted under sections 67–71 of the Real Property Law.

*Hurry & Dutton,* for the petitioner.

*Carleton B. Shaw,* guardian *ad litem,* for infants.

*E. C. Miller,* referee in person.

WILLIAM F. DOWLING, J. The petitioner made application to sell certain real property in the village of Skaneateles, N. Y., belonging to the estate of Samuel M. Roosevelt, deceased, of which property he is a life tenant, pursuant to sections 67 to 71 of the Real Property Law. On compliance with the requirements of these sections, the application to sell was approved, the sale was authorized at not less than $14,000, the property was sold, through the efforts of Mr. Shotwell, a realty broker, for $16,000. Application is now made to confirm the sale and for allowances for services and disbursements herein, as follows: Mr. E. C. Miller, referee to sell, $350 for services, and $77.43 for disbursements; Mr. Carleton B. Shaw, the guardian *ad litem* for the infants herein, $250 for services and disbursements; the petitioner, for services of his attorneys in this proceeding, Hurry & Dutton of New York city, $1,000, and for their disbursements $171.30; Trumbull S. Shotwell, $800 for broker's commissions for procuring a purchaser for the said real property; $40 for one-half mortgage tax (part of the purchase price being paid by accepting back a mortgage upon the real property in question).

This is a special proceeding, within the meaning of sections 4 and 5 of the Civil Practice Act. There is nowhere in the Civil Practice Act, or in the sections of the Real Property Law in question, any provision for the payment of costs, allowances or disbursements in a proceeding of this character. My attention has not been directed to any statutory provision or regulation or any rule of practice regulating allowances in such a proceeding. It is the claim of the petitioner that the court has inherent power to grant allowances and disbursements where, as here, the proceeding was instituted and prosecuted solely for the benefit of all parties concerned.

Section 1492 of the Civil Practice Act provides as follows: " Costs in a special proceeding in a court of record. Costs in a special proceeding instituted in a court of record or upon an appeal in a special proceeding taken to a court of record, where the costs thereof are not specially regulated in this act, may be awarded to any party, in the discretion of the court, at the rates allowed for similar services in an action brought in the same court or an appeal from a judgment taken to the same court, and in like manner."

The foregoing section does not apply here, as that relates exclusively to costs in a proceeding. The petitioner is not asking for costs here. Nor does rule 300 of the General Rules of Practice apply, in so far as the compensation of the guardian *ad litem* herein is concerned, for the reason that it relates exclusively to the sale of infants' realty.

Section 69 of the Real Property Law (as amd. by Laws of 1920, chap. 639, § 3, in effect September 1, 1920) provides: " In case a sale of such real property is authorized, the final order must direct that *the proceeds* of such sale be paid into the hands of some trust company authorized by law to act as trustee or to some person or persons who shall thereby become trustee or trustees for such life tenant and remaindermen, or for such other person or persons as may be or become entitled to the proceeds of such sale   *   *   *."

Section 71 of the Real Property Law (as amd. by Laws of 1918, chap. 578, § 4) provides: " The trustees appointed by the court of funds realized from the sale of real property under these provisions shall, unless otherwise ordered by the court, invest such funds in the manner and form prescribed and regulated by law, relative to investment of trust funds by trustees, and shall pay and apply the net income, after deducting all lawful expenses and commissions, to the use of the life tenant during life and upon the death of the life tenant pay over and distr bute the principal to and among the remaindermen or other persons that may then be entitled thereto in accordance with the order of the court upon an accounting."

From the foregoing provision of section 69 of the Real Property Law, it is apparent that the proceeds of the sale are to be deposited with a trust company as trustee, or with an individual appointed by the court as trustee. The trustee receiving the proceeds of the sale shall distribute them as provided by section 71 of the Real Property Law, to and among the remaindermen or other persons that may then be entitled thereto in accordance with the order of the court upon an accounting. The trustee is directed, under the statute, to pay and apply the net income after deducting all lawful expenses and commissions, to the use of the life tenant during his life. Such trustee has no authority to pay the expenses of the proceeding wherein the trust fund delivered to it was created.

The words " proceeds of sale," as used in said statute, mean the net proceeds of the sale. Under rule 259 of the Rules of Civil Practice, and section 1045 of the Civil Practice Act, " proceeds of sale." mean the gross proceeds. The term " proceeds of sale " has no definite, fixed meaning. Unless its meaning is fixed by statute or rule, it is to be interpreted as gross or net proceeds,

as the occasion requires, otherwise the expenses of proceedings such as this could not be ordered paid.

Petitioner here is a life tenant and a testamentary trustee under the will of the above-named decedent. He has instituted this proceeding as such life tenant, for the benefit of every one interested in this particular item of the estate, of which he is both a life tenant and a trustee. Manifestly, the petitioner could not properly pay the expenses of this proceeding out of the general trust funds in his hands as trustee. Nor can the court direct the new trustee to pay such expenses for the reason that the statute directs the disposition of the proceeds of the sale coming into the hands of such trustee. Consequently, if the expenses of the proceeding are to be paid at all, they must be paid from the proceeds of the sale herein, before any money is turned over to the new trustee. Any right to make the allowances herein asked must spring from the inherent powers of the court. Has the court such power? I think it has.

Persons acting *en autre droit*, as executors, administrators, trustees, guardians, receivers, life tenants, are, upon a faithful execution of their trusts or *quasi* trusts, to be indemnified out of the trust property, for all expenses necessarily incurred in the faithful performance of their duties. (*Fearns* v. *Young*, 10 Ves. 184; *Downing* v. *Marshall*, 37 N. Y. 380, 388–390; *We'more* v. *Parker*, 52 id. 450, 466; *Savage* v. *Sherman*, 87 id. 277; *Trustees* v. *Greenough*, 105 U. S. 527; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27; *Atwater* v. *Elkhorn Valley Coal-Land Co.*, 184 App. Div. 253; affd., 227 N. Y. 611; *Strong* v. *Dutcher*, 186 App. Div. 307, 310; *Matter of Maxwell*, 218 N. Y. 88, 90; *Jessup* v. *Smith*, 223 id. 203, 207.)

In the case of *Fearns* v. *Young* (*supra*), decided in 1804 by the lord chancellor of England, the question as to whether or not the trustee or the next friend of an infant was entitled to allowances beyond taxable costs arose. The lord chancellor said (at p. 184): " My notion upon this subject is this. Where the costs of a trustee are directed to be taxed, that means as between party and party; not in the larger way. But where a trustee in the fair execution of his trust has expended money by reasonably and properly taking opinions, and procuring directions, that are necessary for the due execution of his trust, he is entitled, not only to his costs, but also to his charges and expenses, under the head of just allowances (90). Some of the Masters, I find, think, that, as these charges cannot come under the head of costs, they cannot be given under just allowances. With regard to an infant this requires great consideration; for, as the infant himself cannot incur charges and expenses, if they cannot be claimed under just allowances, and the next friend is to be at the whole expense of

the infant beyond his costs, persons will deliberate, before they accept that office (91)."

This principle was adopted and followed by the courts in this State, and is now the law. In the case of *Downing* v. *Marshall* (*supra*), decided in 1867, the question of allowances for counsel fees and disbursements of a trustee arose and was discussed at great length. The court said (at pp. 388, 389): " * * * The principle to which I refer is, that persons acting *en autre droit*, as executors, administrators, trustees, guardians, receivers, etc., are, upon a faithful execution of their trusts, to be indemnified out of the trust property, for all expenses necessarily incurred in the faithful performance of their duties. (2 Wil. on Ex. 1137; *Stewart* v. *Hoare*, 2 Brown Ch. 663; *Fearns* v. *Young*, 10 Ves. 184; *Attorney-General* v. *City of London*, 1 id. 243; Lewin on Trusts and Trustees [Phil. ed. 1858], 557; Beames on Eq. Costs, 13 *et seq.*, 157 *et seq.*, 214 *et seq.*; Tiff. and Bullard on Trusts, 697 *et seq.*) It is a general rule, that a trustee shall have no allowance for his *trouble* and loss of time, and one of the reasons given is, that, on these pretences, if admitted, the trust estate might be loaded and rendered of little value, besides the great difficulty there would be in settling and adjusting the *quantum* of such allowances, especially as one man's time may be more valuable than that of another. (Lewin on Trusts, and cases there cited.) Though a trustee is allowed nothing for his trouble, he is allowed everything for his *expenses out of pocket*. (Lewin on Trusts, 557.) Lord ELDON, in *Worrall* v. *Harford* (8 Ves. 8) says: that ' it is in the nature of the office of a trustee, whether expressed in the instrument or not, that the trust property shall reimburse him all the charges and expenses incurred in the execution of the trust.' A trustee will be entitled to be reimbursed his necessary traveling expenses; fees properly paid to counsel * * *."

In *Matter of Maxwell* (*supra*), decided by the Court of Appeals in 1916, the court said (at p. 90): " Such an allowance is only permissible, in the exercise of the inherent power of the court, to defray expenses necessarily incurred by the committee in the faithful performance of his duties. This power exists in the Supreme Court, where its exercise in behalf of the testamentary trustees has been sustained upon the principle ' that persons acting *en autre droit*, as executors, administrators, trustees, guardians, receivers, etc., are, upon a faithful execution of their trusts, to be indemnified out of the trust property, for all expenses necessarily incurred in the faithful performance of their duties.' (*Downing* v. *Marshall*, 37 N. Y. 380, 388.) The same rule has been applied in favor of executors in a case where it was held to warrant the allow-

ance of counsel fees as a part of the expenses of the trust. (*Wetmore* v. *Parker*, 52 N. Y. 450, 466.) Its existence was recognized more recently in *Matter of Application of Holden* (126 N. Y. 589)."

In *Matter of Peyser* (N. Y. L. J. March 20, 1923), which was a proceeding like the instant one, the question as to the power of the court to make allowances for attorneys' fees, etc., to a trustee arose. The court said in part: " The moving parties showed that they retained the attorney acting for them as petitioners in the proceeding upon the request of the foreign corporate trustee of the estate, who could not then be appointed trustee of the realty assets in this State, upon the assurance that the proceedings for the appointment of trustees in this State would be without expense to them and that the legal expenses would be paid out of the estate. They concede that the attorney was entitled to compensation and do not question the amount of the allowance, but contend merely that the court had no power to make the allowance and rely upon section 3240 of the old Code and *Matter of Holden* (126 N. Y. 589). That contention entirely overlooks the fact that in that proceeding the two petitioners were acting not merely for themselves, as they each held only 10 per cent. of the residuary estate, but were acting as ' *quasi* trustees ' for nearly thirty other remaindermen (who hold the remaining 80 per cent. of the residuary estate) in order to protect the common interests of all those interested in the trust estate. Hence in such a situation the Code provisions have no application, for it is well settled that a court of equity has inherent powers to make an allowance for expenses, including counsel fees, out of a fund that has been benefited and protected by one or more persons acting not merely for themselves but as ' *quasi* trustees ' for the benefit of many others interested in the same fund (*Downing* v. *Marshall*, 37 N. Y. 380; *Wetmore* v. *Parker*, 52 N. Y. 456; *Woodruff* v. *N. Y., L. E. & W. R. R.*, 129 N. Y. 27; *Matter of Maxwell*, 218 N. Y. 88, at p. 90; *Strong* v. *Dutcher*, 186 App. Div. 307, at p. 310, and *Smith* v. *Johnson*, 200 App. Div. 811, at p. 820). Upon principle it would seem to be immaterial whether the allowance in such a case is made in the original proceedings or in a direct action to have the value of the services charged upon the trust funds, as in the case of *Smith* v. *Johnson* (*supra*). Order signed."

In *Matter of Cohen* (169 App. Div. 544), a disbarment proceeding arising out of unprofessional conduct on the part of Cohen in conducting a proceeding like the instant one, instituted by a life tenant, it appears in the course of the opinion in the Appellate Division that allowances similar to those asked for here were made in said proceeding.

It has long been the practice in this State for judges to make allowances in similar proceedings. There are some decisions which indicate that a guardian *ad litem* appointed in proceedings similar to the instant one, should be compensated out of the share coming to the infants whose interests he is appointed to conserve. In those cases, however, there was a fund belonging to the infants which could be reached in such proceedings. In the present proceeding the interests of the infants are contingent only. They may never receive any part of the trust estate, yet they were necessary parties to the proceeding; it was necessary that a guardian *ad litem* be appointed for them, and I think the guardian should be compensated out of the fund in question.

The petitioner acted wisely in retaining the services of the broker herein. By his skill the property was sold for $2,000 more than was anticipated. The petitioner was strictly within his rights in procuring the services of said broker, and I think that he is entitled to be allowed a reasonable broker's commission for such services as a necessary disbursement herein.

All those presently interested in the trust urge that the allowances asked for be made. Taking into consideration the amount of work involved in the proceeding and the services rendered by the broker, guardian *ad litem* and petitioner's attorneys, the sums asked for are fair and reasonable in amount.

An order may be entered confirming the referee's report of sale and directing the payment of the allowances for services, disbursements and broker's commissions out of the proceeds of the sale herein, and directing that the balance of the proceeds of said sale be paid to the trustee designated to receive the same.