THE PEOPLE OF THE STATE OF NEW YORK ex rel. PAUL HUNT, Relator, *v.* C. JONATHAN SLOCUM, Respondent.

Supreme Court, Dutchess County, March 5, 1932.

*Cardozo & Nathan* [*Michael H. Cardozo, Jr.*, of counsel], *Henry A. Uterhart* and *Sydney A. Syme*, for Paul Hunt.

*George C. Norton*, for Mrs. Deidrich.

All of the above-named attorneys appear in person and as petitioners.

*Sullivan & Cromwell* [*E. H. Sykes* of counsel], for the committee of the property of Mabel Hunt Slater.

MORSCHAUSER, J. This is an application addressed to the court in which certain attorneys seek remuneration for their services in this proceeding and also for the compensation for certain alienists employed by such attorneys.

Mabel Hunt Slater in the fall of 1929 was received at Craig House, a very well-known and very well-established sanitarium for the treatment of nervous diseases, at Beacon, N. Y. Thereafter, with the consent of her physicians, she was allowed to return to her apartments in New York for a few days and while there was visited by her brother, Paul Hunt, and a violent mental upset followed. An application was then made to the court and she was committed to the Craig House and a further application was also made to the court in New York county, as a result of which she was adjudged to be an incompetent person and her three children appointed committee of her person and Philip J. Dunn and the Bank of New York and Trust Company were appointed committee of her property. At the time of the hearing before the commissioner and the jury the said Mabel Hunt Slater was not produced, perhaps because of her mental upset. She was represented by a special guardian.

In November of 1930, Michael H. Cardozo, Jr., of the firm of Cardozo & Nathan, was retained in behalf of the said incompetent by her brother, Paul Hunt. He made a careful investigation; through his intervention a ring which the committee of the property were suing to recover from the wife of Paul Hunt was returned to the committee of the property; and with the consent of Sullivan & Cromwell, attorneys for the committee of the person, an examina-

tion of the incompetent was made by Dr. Smith Ely Jelliffe in the presence of Doctor Tilney, the incompetent's physician. Thereafter Paul Hunt also retained Henry A. Uterhart as counsel. Being informed, apparently, by Paul Hunt, that the incompetent was to be removed from the Craig House, a writ of habeas corpus was obtained returnable before Mr. Justice Lydon in New York county on January 26, 1931. No proof that there was any actual intention to remove the incompetent appears from the record. Mr. Justice Lydon referred the matter to Mr. Justice Morschauser at Special Term, Poughkeepsie, N. Y.

Mrs. Deidrich, a sister of the incompetent, accompanied by the said Paul Hunt, retained George C. Norton to represent her on the proceeding.

Hon. A. H. F. Seeger was appointed guardian *ad litem* and special guardian of the incompetent to protect her interests in the proceeding.

Before any testimony was taken, the relator, Paul Hunt, and his sister, Mrs. Deidrich, discharged their attorneys and Paul Hunt retained Sydney A. Syme of Mount Vernon, N. Y., to continue the proceedings. A substitution was had. An answer was interposed by the special guardian. Thereafter the relator, Paul Hunt, asked leave of the court to discontinue the proceedings. This request was denied, but allowed him to withdraw therefrom, and the order denying the request was affirmed by the learned Appellate Division. Thereafter a hearing was had and a number of physicians were examined as to Mrs. Slater's mental condition. The special guardian had engaged Doctor Woodman, superintendent of the Middletown State Hospital, who made his examination and testified that the incompetent was suffering from manic-depressive insanity. The relator, Paul Hunt, thereafter did not attend the hearings.

The incompetent, through her attorney, Francis S. Mancuso, applied to the Special Term in New York county held by Mr. Justice Shientag for the discharge of the committee of the incompetent on the ground that the incompetent had recovered. The attorneys for the committee appeared before this Special Term and raised the question that a similar proceeding was already pending in Dutchess county. The learned justice, however, appointed two alienists to examine the incompetent, and after the dismissal of the writ of habeas corpus in Dutchess county such alienists reported to Mr. Justice Shientag that the incompetent was unable to manage herself or her affairs by reason of insanity.

The sister, Mrs. Deidrich, intervened and continued the pro-

ceedings abandoned by Hunt, and then she failed to attend on the date set for hearing.

The hearings in the Special Term in Poughkeepsie were many. It clearly appeared that Mrs. Slater is incompetent to manage herself or her affairs, and the writ of habeas corpus was dismissed and Mrs. Slater was remanded to the custody of Doctor Slocum at Craig House, Beacon, N. Y.

During the hearings in the habeas corpus proceedings before the court at Special Term an adjournment was taken to Craig House where the incompetent had full opportunity to state her alleged grievances to the court. On that day Mrs. Mabel Hunt Slater's incompetency was clearly and convincingly apparent, even to a layman. This hearing was the first opportunity afforded her to be heard in person.

The report of Dr. Smith Ely Jelliffe made to the attorneys for the relator Hunt clearly indicates the incompetency of Mrs. Slater. No report of Dr. Frederick Peterson as to his findings is presented. The proceedings undoubtedly have been very costly to the incompetent's estate. Herein Cardozo & Nathan, Henry A. Uterhart, George C. Norton and Sydney A. Syme, attorneys, apply for compensation for services and expenditures although unsuccessful.

The committee of the property of the incompetent vigorously opposes the application. It is claimed that the proceeding was not made in good faith in so far as it relates to the relator Hunt, and that in any event nothing that was done was of any benefit to the incompetent, but only tended to excite and aggravate her and prolong her mental derangement.

It seems that the doctrine that compensation is allowed to counsel for proceedings on behalf of an incompetent when such action is justified under the circumstances, even though unsuccessful, has been approved by the courts. The tests are, were the respective counsel justified upon reasonable grounds to inquire whether the alleged incompetent was still insane, or in fact whether the alleged incompetent is unable to care for herself or her property. (*Carter v. Beckwith*, 128 N. Y. 312–319.)

In *Matter of Larner* (68 App. Div. 320; modfd., 170 N. Y. 7) the learned Judge WERNER said (at p. 8): " We think that the Appellate Division, instead of simply reversing the order of the Special Term, should have sent the proceeding back to that court with instructions to inquire by reference or otherwise into the necessity or propriety of the habeas corpus proceeding, the right of the respondent's counsel and those interested with him to compensation, and the reasonableness of the charges upon which the

claims herein are based." (See, also, *Matter of Haslett*, 188 App. Div. 208; revd., on other grounds, *sub nom. Matter of Lord*, 227 N. Y. 145; *Matter of Hardy*, 26 App. Div. 164–166.)

The question is, has the court power to compensate these attorneys, were they justified in the course they pursued under all the existing circumstances then known to them?

In view of all facts of the case, in view of the fact that this is the first time the incompetent had an opportunity to be heard in court, in view of the fact that the incompetent's very valuable ring was returned through the intervention of Mr. Cardozo, I have decided that a reasonably modest compensation should be awarded to the respective attorneys which will include disbursements.

I, therefore, award and allow to Michael H. Cardozo, Jr., $1,150; to Henry A. Uterhart, $600; to George C. Norton, $250, and to Sydney A. Syme, $500. I believe it is proper to compensate Dr. Smith Ely Jelliffe and Dr. Frederick Peterson for their services. In my opinion, the amount asked by Doctor Peterson of $1,000 and Doctor Jelliffe of $1,500 is not unreasonable, and the same is allowed. Payment should be made after furnishing and filing a full report setting forth the facts of the case.

No provision is made for the reimbursement of Paul Hunt or Mrs. Deidrich for any payments made by them, or expenditures made or incurred by them.

Present order.