In the Matter of the Estate of MARIE MARTENS BOULWARE, Deceased.

Surrogate's Court, Westchester County, June 28, 1932.

*Toomey & Toomey*, for the executors.

*Thomas & Friedman*, for father of children.

*James H. Cavanaugh*, special guardian.

SLATER, S. The decedent died on February 22, 1930, leaving a will made on January 13, 1930. She left two infant children, one two years and the other four years of age, residing with Jeanne

R. Martens, the aunt. The petition for probate shows that the decedent was granted an absolute divorce from the father of the infants in the State of California and that the custody of the persons and estates of the said infants was awarded to the said decedent; that the infants have no general guardian and that the petitioner was named as testamentary guardian.

The second paragraph of the will appoints the decedent's sister and brother, or the survivor of them, executors of the will. The fourth paragraph gives all the property, real and personal, to the said executors to hold in trust for the benefit of the two infant children until they shall arrive at the age of twenty-one years. The fifth paragraph names the said brother and sister as joint guardians of the said children and gives them the power to fix the place and manner in which the said children shall live.

The account of proceedings of the executors has been filed and the special guardian has filed two objections to the account.

One of these objections relates to a reinvestment of securities and possible loss occasioned thereby. The executors and trustees are given the right to invest and reinvest the principal of the trust property in such manner and at such times as the trustees may deem fit and proper. The conversion of the bonds of the American Telegraph and Telephone Company into stock ordinarily would have been an exercise of sound judgment and serve as a benefit to the estate. In view of the economic condition now existing in the world, a paper loss has been taken. The power of the executors and trustees is confirmed by opinion of this court in *Matter of Wilmerding* (135 Misc. 674); *Matter of Davis* (120 id. 457). I decline to surcharge the trustees for the paper loss at this time. In my opinion, they exercised their best judgment and discretion, and the most that can be said is that it was simply an error of judgment, and such kind of error of judgment as every person in the country who has had securities has been subjected to. This objection is dismissed.

The other objection relates to the payment of $1,250 for legal services. After the divorce in California, with the custody of the children given to the wife, the decedent and her two children came to Pelham to reside. After her death, and on May 8, 1930, the former husband, Clark Lewis Boulware, instituted habeas corpus proceedings in the Supreme Court to obtain custody of the children, who had been living, since their mother's death, with decedent's brother and sister, the executors and trustees. The defendants were the brother and sister individually. It was charged in the return that the relator was unfit to have the custody of the children. On the trial the writ was dismissed and the children remanded to

the custody of the uncle and aunt. Upon appeal to the Appellate Division (*People ex rel. Boulware* v. *Martens*, 232 App. Div. 258) the order dismissing the writ of habeas corpus was unanimously reversed, and the custody of the relator's children was awarded to the father. This judgment was affirmed by a divided court (258 N. Y. 534). The accounting executors, out of the assets of the estate, paid counsel fees of $1,250 for legal services rendered to them individually as custodians and next friends of the infants.

The attempt to appoint a testamentary guardian for the two infant children was a nullity. (Dom. Rel. Law, § 81.)

The father on June 30, 1930, petitioned the Surrogate's Court for letters of guardianship. None were granted. Consideration was withheld by the court to await the outcome of the habeas corpus proceedings.

I hold that the executors were without authority to make such payment. The claim was incurred, not by them, but by the custodians of the infants, by the executors in their individual capacity.

It is my opinion, however, that the bill, if reasonable, may properly be paid upon well-founded legal principles.

It is the inherent power of the Supreme Court as a guardian of all infants, in proper cases, to take the custody and control of a child from its general guardian. This holding recognizes that, in exceptionable cases, the guardianship of the person does not always in all conditions give absolute right to the custody of the person. The right of the general guardian is the same as that of the father, and must submit to the same regulation and control. (*Matter of Lee*, 220 N. Y. 532, 539; *Matter of Yardum*, 228 App. Div. 854; *People ex rel. Roberts* v. *Kidder*, 137 Misc. 347.)

The right of the parent to the care and custody of the child becomes superior to that of all others, unless it should be shown anew by the child's relatives or custodians that he is an unfit person to exercise guardianship or the custodial control of the child. The judgment of divorce may be evidence that he is unfit, but it is not conclusive. It does not bar his right to apply for the custody or guardianship of his child. His domicile fixes the domicile of the children. (*Matter of Thorne*, 240 N. Y. 444, 449.)

Thus is laid open the question of the fitness of the father to become the custodian or general guardian of the two children. Their mother, by her will, showed an intention, while invalid in law, to give the custody of her two children to her brother and sister. It can be said, however, that it was the duty of the custodian or next friend of the infants to raise the question of the fitness of the father, which they did in the habeas corpus action. The

welfare of the child must dominate the proceedings. (*People ex rel. Mahoff* v. *Matsoui*, 139 Misc. 21; *People ex rel. Rich* v. *Lackey*, Id. 42.)

With reference to habeas corpus proceedings, section 70 of the Domestic Relations Law states: " In all cases there shall be no *prima facie* right to the custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness, and make award accordingly."

I believe the uncle and aunt, the attempted testamentary guardians, the next friends and the custodians of the children at that time, had a duty to perform to bring to the court for its decision the question as to whether the father was a fit and proper custodian and guardian of the children. That question the court has decided.

The doctrine has been adopted by the courts that persons acting *en autre droit* as executors, administrators, trustees, guardians, receivers, life tenants, etc., are to be indemnified out of trust property.

In the case of *Fearns* v. *Young* (10 Ves. 184), decided in 1804 by the Lord Chancellor of England, the question arose as to whether or not the trustee or *next friend* of the infant was entitled to allowances. It was held that " where a trustee, in the fair execution of his trust has expended money * * * he is entitled * * * to his charges and expences * * *. With regard to an infant, this requires great consideration for, as the infant himself cannot incur *charges* and *expences;* if they cannot be claimed under just allowances, and the next friend is to be at the whole expence of the infant beyond his costs, persons will deliberate, before they accept that office."

This principle was adopted in this State in *Downing* v. *Marshall* (37 N. Y. 380, 388, 390), and has been since maintained and is now the law. In that case the court said that a trustee's duties relate to the property and interest of others and he is to be indemnified for the expenses necessary for protecting such trust property, and has an equitable lien upon it for such expenses. The underlying principle is that the person is allowed nothing for his trouble, but is allowed everything for his expenses out of his pocket. (Lewin Trusts, 557; *Matter of Maxwell*, 218 N. Y. 88, 90; *Jessup* v. *Smith*, 223 id. 203, 207; *Matter of Roosevelt*, 131 Misc. 800, and cases cited; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27, 30; Perry Trusts, § 910.)

No general rule as to the right of reimbursement or payment out of the estate has been laid down by the authorities. Necessarily, the distinctive circumstances of each estate must govern. The good

faith of the persons acting appears to be an essential test. (*Matter of Van Volkenburgh*, 139 Misc. 437.)

There is no statutory authority for such payment, but such an allowance is permissible in the exercise of the inherent power of the court to defray expenses necessarily incurred by a person in the faithful performance of his duties. This power exists in the Supreme Court where its exercise in behalf of testamentary trustees has been sustained upon the principle that " persons acting in *autre droit* (in behalf of another person), as executors, administrators, trustees, guardians, receivers, etc., are, upon a faithful execution of their trusts, to be indemnified out of the trust property * * *." (*Downing* v. *Marshall, supra; Wetmore* v. *Parker*, 52 N. Y. 450, 466; *Matter of Holden*, 126 id. 589.) The expenses of the committee of an incompetent person fall within the reason of the rule. (*Matter of Maxwell*, 218 N. Y. 88; *Jessup* v. *Smith*, 223 id. 203, 207; 2 Jessup-Redf. [1930 ed.] 2323.)

" Formerly, the rule was that in the absence of extraordinary conditions, an executor or administrator should pay out of his own funds the fees of his attorney, and then after paying them obtain indemnity or allowance upon the settlement of his accounts to the extent that the payments were found to be reasonable and necessary * * *. The administratrix, therefore, was acting within her rights if she disbursed the moneys of the estate for reasonable and necessary expenses * * *.

" We think the payments are not to be condemned as unreasonable or unnecessary * * *. Beneficial and even necessary to the estate they unquestionably were." (*Matter of Gilman*, 251 N. Y. 265, 271.)

All cases at hand deal with the question of allowances arising out of the control of the corpus of trusts for, or the *property of, infants.*

In the instant case we are dealing with the *custody of the persons* of infant children. The uncle and aunt were the custodians and next friends of the persons of children of tender age who were left with them by their mother. They had a duty to perform in submitting to the court the question of the fitness of the father to become custodian or general guardian.

" The expression ' next friend ' has a definite and well-established meaning, *i. e.,* ' one who, without being regularly appointed guardian, acts for the benefit of an infant, married woman or other person not *sui juris.*' " (*Walter* v. *Walter*, 170 App. Div. 870, 873.)

The words " charges " and " custody " are frequently used as synonymous. A next friend for an infant party has a duty to bring

those rights directly under the notice of the court. (5 Words & Phrases, First Series, 4797; *Leopold* v. *Meyer*, 10 Abb. Pr. 40.)

These infants stood in need of two things: *First*, maintenance and education; *second*, intelligent supervision over and conduct of their material affairs. Both were necessaries. (*Matter of Morris*, 134 Misc. 374, 386.)

The uncle and aunt were acting as custodians of the persons of decedent's two infant children, as well as trustees of their property passing under the decedent's will.

In *Ex Parte Dawson* (3 Bradf. 130) an infant, a citizen, had been taken to England, and it was held that the guardian was justified in attempting to recover the custody of his ward by invoking the aid of the English courts, and that the expense of such a proceeding was a proper charge upon the infant's estate. It seemed to the surrogate that it was the duty of the guardian to take such steps as were necessary to recover the possession of the infant. In the judgment of Surrogate BRADFORD, the guardian was entirely justified in proceeding to England and making an appropriate appeal for the restitution of her ward and the court directed the allowance of expenses to the guardian.

In the instant case the custodians or next friends of the infants did the exact thing as did the custodian in *People ex' rel. Wright* v. *Gerow* (136 App. Div. 824 [2d Dept.]). In that case the court did declare the relator unfit. The court, at no time, chastised the custodian, or next friend, for his efforts to protect the moral life of the children. The children were living in the family of the appellant in whose custody they had been placed by their father, the husband of the relator, during his last illness. The other appellants, with John Y. Gerow, were appointed guardians of the persons and estates of said children by the will of their father. The relator challenged the validity of the provisions of the will making the appointment of a guardian. The appellants resisted the attempt of the relator to gain custody of the children on the ground that she was not morally fit nor a proper person, and asserted their rights and premises as testamentary guardians.

The right of habeas corpus is used in a controversy touching the custody of infants which are governed not so much by consideration of legal rights as those of expediency and equity and, above all, the welfare and interest of the infants. A proceeding in habeas corpus relative to the custody of a child must be viewed in two aspects: (1) Inquiry into the question whether the child was unlawfully restrained from liberty, and (2) a means for investigating and determining which of two parties has the better right, and is better qualified to have the custody of the child.

The right to reimbursement involves the question of necessity, propriety, protecting the infants and setting the matter before the court in a habeas corpus proceeding and the reasonableness of the charges. (*Matter of Larner*, 170 N. Y. 7.)

In *People ex rel. Hunt* v. *Slocum* (143 Misc. 94), March, 1932, Mr. Justice MORSCHAUSER held that attorneys were entitled to compensation in a proceeding in behalf of an incompetent where proof established they had reasonable grounds to inquire whether or not the incompetent was still insane. The fact that they were unsuccessful does not warrant denial of the application. The learned court said: " It seems that the doctrine that compensation is allowed to counsel on behalf of an incompetent when such action is justified * * * has been approved by the courts. The tests are, were the respective. counsel justified upon reasonable grounds to inquire whether the alleged incompetent was still insane." (*Carter* v. *Beckwith*, 128 N. Y. 312, 319.) (See *Matter of Haslett*, 188 App. Div. 208; revd., on other grounds, *sub nom. Matter of Lord*, 227 N. Y. 145.)

An infant's estate is liable for moneys advanced for the necessaries of life. The general principle has been applied in many cases that allowances for proper maintenance may be made providing the expenditure would have been authorized by the court if application had been made in advance. (*Hyland* v. *Baxter*, 98 N. Y. 610.)

The uncle and aunt were acting in the belief that they were testamentary guardians. One who voluntarily assumes the care and custody of a child is bound to provide proper care for such child. (*Cowley* v. *People*, 83 N. Y. 464.)

We must look to the principle of inherent power in the courts as a basis of this court's authority if we sustain the payment of the money for legal services. In *Livingston* v. *Ward* (248 N. Y. 193, 195) the court said: " Doubtless the discretion vested in the Supreme Court is a judicial discretion, and there must be circumstances shown which justify the manner of its exercise." Here, such circumstances are present. The relator sought custody of the children, and the defendants, the then custodians, asked the court to determine what parties should have the possession of the persons of the infants of tender years. That was the subject-matter of the proceeding. The contention of the uncle and aunt was so substantial that it prevailed at Special Term and received the approval of three judges in the Court of Appeals.

Their equitable claim is for reimbursement of the expenses incurred in the habeas corpus proceeding. (*Smith* v. *Johnson*, 200 App. Div. 811, 820.)

A trustee who is unwilling to assume personal liability for services

essential to the *protection of a trust* has the power, if other funds fail, to create a charge, equivalent to his own lien for reimbursement, in favor of another by whom the services are rendered. (*Schoenherr v. Van Meter,* 215 N. Y. 548, 552.) This is exactly what these custodians and next friends undertook to do for the *protection of the persons of the infants.* This doctrine is approved in *Jessup v. Smith* (223 N. Y. 203); *Strong v. Dutcher* (186 App. Div. 307 [2d Dept.]). They acted to protect the infants in the absence of any other legal authority to act for them. While the parent individually is entitled to the custody of a child, the welfare of the child may be superior to the claim of the parent. (*Matter of Gustow,* 220 N. Y. 373, 377.)

If the court has the inherent power to indemnify out of trust property for proper expenses in connection with the *property* of infants, then it must be held that a court of equity has the inherent power to pay reasonable expenses to secure a ruling as to the proper and fit control of the *persons of infants,* where such payments are beneficial and necessary to the persons of the infants. The court will extend the application of the principle to this case.

The custodians in the instant case performed a proper act in submitting the question to the court. (*Matter of Newman,* 142 Misc. 617, 619.) It cannot be said that the custodians were looking for a law suit without reason. Their efforts to test the question were meritorious. They were protecting their own blood and evidently carrying out the wishes of the mother. I see no reasons why these legal services should not be compensated for out of the estate of those for whose benefit they were performed, *i. e.,* the children. They were attempting to preserve the proper surroundings which would act as character builders for these two children.

The custodians or next friends, the uncle and aunt, were acting *en autre droit* for the infants and should be indemnified out of trust property of the infants now in the hands of the trustee of the trusts created by the decedent's will, for the expenses necessarily incurred in the faithful performance of their duties in presenting to the court the question of the fitness of the father of the infants to the control and guardianship of their persons.

The special guardian does not question the reasonableness of the charge and the court finds the amount reasonable.

As to the item of twelve dollars and fifty cents for taxi bill, the accounting parties are to amend the account by omitting it.

Submit order directing the trustee of the infants' property to make the payment of $1,250 for legal expenses necessarily incurred.