In the Matter of the Accounting of ISIDORE LEVINE, as Conservator of the Property of LEON HELLMAN, a Conservatee. ISIDORE LEVINE et al., Appellants; JAMES GREILSHEIMER, as Preliminary Executor of LEON HELLMAN, Respondent.

First Department, June 14, 1988

**APPEARANCES OF COUNSEL**

*Seth Rubenstein, P. C.,* for appellants.

*Alan Halperin* of counsel *(Ronald J. Stein* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for respondent.

**OPINION OF THE COURT**

AscH, J.

Prior to his appointment as conservator of Leon Hellman,

appellant Dr. Levine found $40,000 in undeposited checks scattered within the Hellman home, and deposited these checks into appellant Rubenstein's special account. From these proceeds Dr. Levine paid outstanding real estate taxes, fees and insurance premiums. Because of the beneficial tax consequences, the conservator, without court authorization, paid Mr. Rubenstein, the attorney for Dr. Levine, $10,000 for approximately 40 hours of service previously rendered. These services saved the conservatee's estate $2,000 in total income taxes for the 1986-1987 years.

The conservatee had two group life insurance policies which had to be converted to individual ones or be allowed to lapse. The conservator converted them for the maximum amount available, requiring an initial expenditure of $9,000 in premiums based on an assessment of Hellman's physical condition. Hellman died suddenly when the conservatorship was only seven months old and, as a result of these conversions, the estate realized more than $300,000.

Appellants conservator and attorney moved, in connection with approval of a final account, for final commissions and fees of $35,667.94 and $19,500, respectively. The Supreme Court, in the order appealed from, reduced both amounts sought to $14,678.80 and $12,500, respectively. The court found the commissionable basis of the conservator's calculations too high, as it included amounts the conservator had turned over to the preliminary executor. These amounts were deemed noncommissionable on the ground that they did not constitute a disbursement for the benefit of the conservatee, now deceased. Thus, commissions were allowed only on principal received upon appointment, income disbursements, and insurance policies providing for payment upon retirement, not payable upon death, for a total commission of $14,678.80.

■ The compensation of a conservator (see, Mental Hygiene Law §§ 77.27, 78.21) is calculated on the commissionable amounts received and disbursed (SCPA 2307). There is no dispute as to the applicable rates but only as to what is commissionable.

None of the $640,000 in insurance death benefits are properly commissionable since, upon the conservatee's death, the conservator ceased having any power to reduce that property to his possession (see, Matter of Wallace, 172 App Div 544). Further, a $3,300 Individual Retirement Account, which the conservator did not have to invade to provide for the conserva-

tee, is not commissionable since this asset was also never received by the conservator (see, Matter of Reich, 94 Misc 2d 319). This is consistent with a previous concession by appellants that a substantial Totten trust was not commissionable. In addition, appellants have also previously conceded that the $900,000 home of the conservatee is not commissionable, as the real estate was not sold during the conservatorship. Thus, the proper amount of commissionable assets received by the conservator was limited to $285,295 (less than that calculated by the nisi prius court).

Appellants contend that the commissionable disbursements include amounts turned over by the conservator to the executor. This position is the same taken by the Second Department (see, Matter of Gottlieb, 117 AD2d 668). This court has not previously addressed the issue. However, the IAS court disallowed disbursements to the executor, following the practice enunciated in Matter of Roshke (NYLJ, Sept. 30, 1977, at 14, col 2 [Sup Ct, Bronx County]). This practice was based on the principle that the conservatee obtains no benefit from amounts paid over to the executor and that the obligation to turn over funds to the executor does not arise from the conservatorship, but applies generally to all persons in possession of assets of the decedent.

We find that the Second Department rule is the better practice. Roshke (supra) relied in part upon In re Hermance (120 NYS2d 562), which barred commissions on the balance of moneys transferred by one committee to a successor committee. The delivery of assets by a conservator to an executor is distinguishable from that situation. Here, the conservatee does enjoy a benefit, having his assets passed on to his designated beneficiaries or heirs at law. In addition, while Roshke correctly notes that a committeeship of an incompetent terminates on the death of the incompetent, the duties of the committee (or conservator) herein do not end to the extent the committee must account and turn over property in its possession to the proper person. Application of the Roshke rule would unfairly diminish the commissions of a conservator simply because the conservatee has died rather than recovered from his incapacity.

Including the amounts disbursed to the executor, the commissionable disbursements would then be the same as the commissionable receipts, $285,295. Commissions for receiving and disbursing are $6,225.90 each, for a total of $12,450.80. Deducting the $6,988.03 actually paid to the conservator

previously (rather than $7,690.77, as erroneously found by the court), a balance of $5,463.77 would remain. These amounts are less than that awarded by the IAS court in the order appealed from. Thus, in the absence of a cross appeal by the preliminary executor or any other party, we affirm the commission award of $14,678.80.

■ As the appellants properly note, several aspects of the IAS court's criticism of the administration of the assets were unjustified. Thus, the 1986 payment of a $10,000 counsel fee was not for anticipated future services, as the court stated, but rather for services rendered. It was disclosed to the court in the final account and motion for a fee and clearly resulted, as noted, in an income tax savings.

The court's conclusion that the conservator overrelied upon counsel also does not appear justified on the sparse record herein. The conservatee's affairs at the time of the appointment were in a deplorable condition, raising complex legal questions.

■ With respect to the conservator's exercise of options to take the maximum amount of individual life insurance, upon expiration of two group life insurance policies at the time of the conservatee's retirement due to disability, the court's criticism that this modified an act of the ward prior to the adjudication of incompetency misinterprets what transpired. The option arose for the first time after the adjudication of incompetency, upon retirement, and there is no evidence at all that the conservatee had previously made any determination or had any intention of discontinuing his insurance. Further, the court's finding that such exercise improperly benefited the heirs over the conservatee is not well-founded in the context of this substantial estate, more than sufficient to meet the conservatee's needs (most of these needs were covered by Medicare). Certainly the conservatee's "needs" under these circumstances also included financial provision for a dependent adult son and a minor daughter.

■ The court was correct, however, in its criticism of appellants for the 1986 payment of counsel fees, without prior court evaluation of the 1986 services, and the commingling of the conservatee's assets with the attorney's special account prior to adjudication of incompetency. These problems are compounded by the counsel's statements on the present appeal claiming that he had sought approval of a fee of $29,500 ($19,500 after deduction for the prior payment) and that the

IAS court cut this request by more than half. A reading of the papers upon the motion clearly shows that he requested a total fee of $19,500. His affidavit submitted upon the motion described in detail services rendered by him throughout the entire period of the conservatorship. Under all the circumstances herein, the award of $12,500 to the attorney was neither arbitrary nor unreasonable and, therefore, should not be disturbed by us *(Matter of Bernheimer,* 61 AD2d 761, *lv denied* 45 NY2d 710).

Accordingly, the order of the Supreme Court, Bronx County (Barry Salman, J.), entered December 7, 1987, allowing the conservator a total commission of $14,678.80 of which $6,998.03 remained to be paid, and awarding his attorney a total fee of $12,500 of which $2,500 remained to be paid, should be affirmed, without costs or disbursements.

SULLIVAN, J. P., CARRO, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, Bronx County, entered on December 7, 1987, unanimously affirmed, without costs and without disbursements.